**Ivan N. SCHATZ; Joann B. Schatz, Plaintiffs–Appellants,**

**v.**

**Mark E. ROSENBERG; MER Enterprises, Incorporated; Stephen Jaeger; Weinberg & Green, Defendants–Appellees.**

No. 90–1889.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1991.

Decided Aug. 26, 1991.

As Amended Oct. 9, 1991.

Carlos Marco Recio, Casson, Harkins & Greenberg, Washington, D.C., argued (Robert E. Greenberg, Michael F. Moses, Casson, Harkins & Greenberg, on the brief), for plaintiffs-appellants.

Nancy F. Preiss, Williams & Connolly, Washington, D.C., argued (Brendan V. Sullivan, Jr., Michael S. Sundermeyer, Leigh A. Kenny, Williams & Connolly, on the brief), for defendants-appellees.

Before WILKINSON, Circuit Judge, CHAPMAN, Senior Circuit Judge, and HILTON, District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

CHAPMAN, Senior Circuit Judge:

Plaintiffs/appellants Ivan and Joanne Schatz sued defendants Mark E. Rosenberg, MER Enterprises ("MER") and the law firm of Weinberg & Green alleging RICO violations, fraud and securities laws violations. The district judge referred the case to a magistrate judge who recommended that five counts of the seven count complaint be dismissed for failure to state a claim upon which relief can be granted. The district judge agreed and dismissed these five counts under Federal Rule of Civil Procedure 12(b)(6). Three of these counts involved Weinberg & Green. In this appeal, plaintiffs only challenge the dismissal of the three counts against Weinberg & Green.[1]

### I.

On December 31, 1986, MER purchased an eighty percent (80%) interest in two

---

1. Before oral argument, plaintiffs moved to amend the record on appeal to include the deposition of defendant Stephen Jaeger. This deposition was taken after the district judge dismissed the claims against Weinberg & Green. Initially, we granted the plaintiffs' motion; however, upon Weinberg & Green's motion for reconsideration, we now deny the motion to supplement the record. We must review the district judge's decision on the same record as that before the district court. However, we note that even the inclusion of Jaeger's deposition would not change the result, because it is not relevant to the legal sufficiency of the complaint.

companies the plaintiffs owned, Virginia Adjustable Bed Manufacturing Corporation ("VAMCO") and Advanced Bed Concepts ("ABC"). MER is a holding company which Mark Rosenberg created to purchase the VAMCO and ABC stock. As payment for their eighty percent (80%) interests in VAMCO and ABC, Mr. and Mrs. Schatz received $1.5 million in promissory notes issued by MER, which Rosenberg personally guaranteed. The plaintiffs relied on a financial statement dated March 31, 1986 and an update letter delivered at closing on December 31, 1986 which indicated that Rosenberg's net worth exceeded $7 million. These financial documents contained several misrepresentations obscuring the fact that Rosenberg's financial empire had crumbled between April and December of 1986. Rosenberg's largest business, Yale Sportswear Corporation ("Yale"), filed for bankruptcy in September 1987, and Rosenberg filed for personal bankruptcy thereafter. The law firm of Weinberg & Green represented Rosenberg and his entities throughout this period.

The plaintiffs never received payment on their promissory notes and lost an additional $150,000 when they made a "bridge loan" to BBC, the company which was formed when VAMCO and ABC merged with the Back Center, Inc. ("BCI"), another of Rosenberg's companies. To add insult to injury, Rosenberg paid Weinberg & Green's legal fees for the transaction out of VAMCO and ABC's cash reserves. Rosenberg siphoned off operating capital from VAMCO and ABC to prop up Yale. By the time Rosenberg and Yale filed for bankruptcy, VAMCO and ABC were essentially worthless, and plaintiffs had no control over the businesses. Thereafter, plaintiffs filed a seven-count complaint asserting: a violation of the Racketeer Influence and Corrupt Organizations Act ("RICO") against defendants Rosenberg and Jaeger (Count I), violations of section 10(b) of the Securities Exchange Act of 1934 against Rosenberg and Jaeger (Count II), and Weinberg and Green (Count III), violations of section 12 of the Securities Act of 1933 against Rosenberg and MER (Count IV), common law fraud against Rosenberg and Jaeger (Count V), aiding and abetting liability under the securities laws against Weinberg & Green (Count VI), common law misrepresentation against Weinberg & Green (Count VII), and declaration of non-dischargeability in bankruptcy of debts owed by Rosenberg (Count VIII).

In response to the complaint, the defendants filed motions to dismiss. Before the district judge ruled on these motions, the Schatzes filed an amended complaint on July 29, 1988. The defendants again filed motions to dismiss, and before the district judge ruled on the second round of motions, the Schatzes filed a second amended complaint, which added several factual allegations in support of the claims. The defendants then filed a third set of motions, which the district judge referred to a federal magistrate judge, who issued her report on March 8, 1990. She recommended that count III against Weinberg & Green, which alleges primary liability under section 10(b) of the Securities Act of 1934, be dismissed without prejudice. The magistrate judge reasoned that plaintiffs could not recover under this cause of action because they did not allege a relationship with Weinberg & Green that would give rise to an independent duty to disclose to them nor did they allege that the law firm made any affirmative misrepresentations.

Similarly, she recommended that plaintiffs' securities claims charging Weinberg & Green with aider and abettor liability be dismissed, and found that "nowhere, in the many pages of opposition, do plaintiffs even hint at what Weinberg & Green did to cause Rosenberg to commit fraud." Finally, she found that plaintiffs' third claim against Weinberg & Green for misrepresentation under Maryland state law was deficient for the same reason as their claim for liability under section 10(b): absent a duty to disclose, mere silence or failure to disclose material facts do not constitute fraud under Maryland law.

On March 8, 1990, the district judge issued an opinion in which he accepted the recommendations to dismiss the counts against Weinberg & Green, but rejected the recommendation that plaintiffs be

granted leave to amend these counts. Although the district judge noted that leave to amend should usually be freely granted, he concluded that since plaintiffs had amended the complaint twice, they did not deserve another opportunity to cure their defective pleadings. The judge noted that the plaintiffs never claimed that they could allege that Weinberg & Green had made any affirmative misstatements or other misrepresentations. Therefore, he doubted whether plaintiffs could ever plead a viable cause of action against these defendants.

On September 12, 1990, the Schatzes moved for reconsideration based on an opinion they had obtained from the Maryland State Bar Association's Committee on Ethics. The district court denied this motion, and the Schatzes appeal.

## II.

We review *de novo* a district court's decision to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Korb v. Lehman*, 919 F.2d 243, 246 (4th Cir.1990). In reviewing the legal sufficiency of the complaint, we construe the factual allegations "in the light most favorable to plaintiff." *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062 (4th Cir.1984). However, we are "not so bound with respect to [the complaint's] legal conclusions. Were it otherwise, Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint." *District 28, United Mine Workers, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085–86 (4th Cir.1979). Accordingly, we will affirm a dismissal for failure to state a claim if it appears that the plaintiffs would not be entitled to relief under any facts which could be proved in support of their claim.

## III.

Plaintiffs argue that Weinberg & Green committed fraud by remaining silent even though it knew that its client, Rosenberg, was financially insolvent. Plaintiffs allege in their second amended complaint that:

—Weinberg & Green provided legal services to Rosenberg in the past and in connection to the purchase of plaintiffs' business;

—Weinberg & Green had a copy of Rosenberg's financial statement, which it knew to be false as a result of legal services to Rosenberg and his various companies;

—Weinberg & Green prepared draft closing documents for the purchase of plaintiffs' business, which Weinberg & Green then delivered to plaintiffs' lawyers;

—Weinberg & Green gave plaintiffs a letter from Rosenberg at closing in which Rosenberg stated that no material adverse changes had occurred in his financial condition; and

—Weinberg & Green and plaintiffs' lawyers jointly agreed on language in the purchase agreement stating that Rosenberg had delivered his 1986 financial statement and an update letter to the plaintiffs, and that the letters were accurate in all material respects.

Based on these facts, plaintiffs argue that Weinberg & Green is liable (1) for violating section 10(b) of the 1934 Securities Act, (2) for aiding and abetting a violation of the securities laws, and (3) for knowingly perpetrating or assisting in misrepresentations under Maryland tort law.

### A. *Section 10(b) and Rule 10b–5*

To state a claim for a primary violation of section 10(b) and Rule 10b–5, a plaintiff must allege that the defendant (1) made an untrue statement of material fact or omitted a material fact that rendered the statements misleading, (2) in connection with the purchase or sale of a security, (3) with scienter, and (4) which caused plaintiff's losses. *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir.1989). Plaintiffs claim that Weinberg & Green violated section 10(b) and Rule 10b–5 by failing to disclose Rosenberg's misrepresentations and by making affirmative misrepresentations about Rosenberg's financial condition.

### 1. Weinberg & Green's Nondisclosure of Rosenberg's Misrepresentations

██ We first address whether Weinberg & Green's failure to disclose Rosenberg's misrepresentations to the Schatzes subjects the law firm to liability under section 10(b) and Rule 10b–5. Silence, absent a duty to disclose, does not violate section 10(b) and Rule 10b–5. *Chiarella v. United States*, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980); *accord Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir.1986) (When the claimed violation arises not from a misstatement, but from a "failure to blow the whistle," liability will not attach unless the defendant has "a *duty* to blow the whistle."). Plaintiffs argue that Weinberg & Green had a duty to disclose Rosenberg's misrepresentations on the basis of federal securities cases, Maryland common law, and the Maryland Code of Professional Responsibility. In addition, plaintiffs argue that as a matter of public policy, lawyers should have a duty to disclose a client's fraudulent activity to a third party. We review these claims seriatim.

### a. *Duty to Disclose Based on Federal Securities Laws*

██ We first address whether the federal securities laws impose upon an attorney a duty of disclosure to third parties who are not the attorney's clients. The Supreme Court has decreed that under the federal securities laws, a duty to disclose "arises from the relationship between parties," *Dirks v. SEC*, 463 U.S. 646, 658, 103 S.Ct. 3255, 3263, 77 L.Ed.2d 911 (1983), and

will exist if there is "a fidiciary or other similar relation of trust and confidence between them." *Chiarella*, 445 U.S. at 228, 100 S.Ct. at 1114. Thus, the Supreme Court has established the type of relationship which will create a duty of disclosure. The Court has never determined whether, under circumstances other than fiduciary relationships, the securities laws impose a duty of disclosure to third parties. Plaintiffs urge us to adopt the approach of several federal district courts which have held that a law firm can be liable for misrepresentation under section 10(b) if it disseminates false information "with an intent, knowledge or awareness that the information will be communicated or disseminated to persons ... in connection with the purchase or sale of a security." *Rose v. Arkansas Valley Envtl & Util. Author.*, 562 F.Supp. 1180, 1206 (W.D.Mo.1983). We decline this invitation and hold that a lawyer or law firm cannot be held liable for misrepresentation under section 10(b) for failing to disclose information about a client to a third party absent some fiduciary or other confidential relationship with the third party. *See Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir.1986) (Because neither section 10(b) nor Rule 10b–5 imposes a duty to disclose, any such duty "must come from a fiduciary relation outside securities law.").

██ Facing this identical issue, the Seventh Circuit has ruled that lawyers have no duty to disclose information about clients to third party purchasers or investors in the absence of a confidential relationship between the attorney and the third party.[2]

**2.** The Seventh Circuit has also consistently applied this rule to accountants who do not disclose damaging financial information about a client to a potential third party investor or purchaser. *See, e.g., DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir.) (accountant under no legal duty to blow whistle on client upon discovery that client in financial trouble), *cert. denied,* — U.S. —, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); *Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322, 1327 (7th Cir.1989) (accountant has no duty to blow whistle on client in order to protect investors); *LHLC Corp. v. Cluett, Pea-*

*body & Co.*, 842 F.2d 928, 933 (7th Cir.) (accountant under no duty to disclose client's fraud to potential investor), *cert. denied,* 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329 (1988). Other federal courts have agreed with the Seventh Circuit. *See, e.g., Windon Third Oil & Gas Drilling Partnership v. Federal Deposit Ins. Corp.*, 805 F.2d 342, 347 (10th Cir.1986) (absent fiduciary relationship, accountant had no duty to disclose information about corporation's financial condition during discussions with potential investor), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987); *Leoni v. Rogers*, 719

In *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490 (7th Cir. 1986), the Seventh Circuit considered whether a law firm had a duty to disclose information relevant to its client's financial stability to third party investors. The court determined that unless the law firm had some fiduciary relationship with the third party, it had no duty of disclosure: "Neither lawyers nor accountants are required to tattle on their clients in the absence of some duty to disclose. To the contrary, attorneys have privileges not to disclose." *Id.* at 497 (citations omitted). *Accord Renovitch v. Kaufman*, 905 F.2d 1040 (7th Cir.1990) (outside of a fiduciary duty to a third party investor, law firm has no duty to disclose financial information about client to the investor); *First Interstate Bank v. Chapman & Cutler*, 837 F.2d 775, 780 n. 4 (7th Cir.1988) (bond counsel not liable to bond purchaser for false opinion letter which was based on purportedly false assumption).

Likewise, the Fifth Circuit has determined that absent a fiduciary or other confidential relationship, lawyers have no duty to disclose information about clients to third party investors. In *Abell v. Potomac Ins. Co.*, 858 F.2d 1104 (5th Cir.1988), *vacated on other grounds*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), the Fifth Circuit held that an underwriter's counsel owed bondholders no duty to disclose inaccuracies in an offering statement for the bonds, even though counsel had a duty of "due diligence" to investigate the representations in the statement and even though counsel permitted its name to appear on the cover of the offering statement. The court explained that

> the law, as a general rule, only rarely allows third parties to maintain a cause of action against lawyers for the insufficiency of their legal opinions. In general, the law recognizes such suits only if the non-client plaintiff can prove that the attorney prepared specific legal documents that represent explicitly the legal

opinion of the attorney preparing them, for the benefit of the plaintiff.

In practice, this rule has meant that an attorney is rarely liable to any third party for his or her legal work unless the attorney has prepared a signed "opinion" letter designed for the use of a third party.

*Id.* at 1124–25 (citations and footnote omitted). Based on this reasoning, the court determined that the underwriter's counsel should not be liable to third parties for failing to disclose misrepresentations in the offering circular.

In addition to these circuits, other federal courts have come to the same conclusion. *See, e.g., Bush v. Rewald*, 619 F.Supp. 585 (D.Haw.1985) (lawyer owed no duty to investors buying from organization when organization, not investors, was attorney's client); *Quintel Corp. v. Citibank*, 589 F.Supp. 1235 (S.D.N.Y.1984) (counsel to partnership owed no duty of disclosure to limited partners).

Plaintiffs rely on several federal securities cases which have held attorneys liable under section 10(b) for failing to disclose misrepresentations made by clients to third parties. First, plaintiffs cite cases imposing liability on attorneys for issuing a reckless and misleading bond opinion letter. *See T.J. Raney & Sons, Inc. v. Fort Cobb, Okl. Irr. Fuel Author.*, 717 F.2d 1330 (10th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984); *Cronin v. Midwestern Okl. Develop. Author.*, 619 F.2d 856, 862 (10th Cir.1980). However, these cases are clearly distinguishable because they involve lawyers who issued misleading legal opinions. In this case, however, plaintiffs do not claim that Weinberg & Green made inaccurate legal representations, only that they failed to tattle on their client for misrepresenting his personal financial condition.

Plaintiffs also cite cases in which courts imposed liability on attorneys who drafted false prospectuses or other securities documents. *See Renovitch v. Stewardship Concepts, Inc.*, 654 F.Supp. 353, 359

F.Supp. 555, 566 (E.D.Mich.1989) (accounting firm owed no duty of disclosure to potential investor of client as long as accountant had no fiduciary relationship with investor).

(N.D.Ill.1987); *In re Flight Transportation Corp. Sec. Lit.*, 593 F.Supp. 612, 617–18 (D.Minn.1984); *Blakely v. Lisac*, 357 F.Supp. 255, 266–67 (D.Or.1972). These cases, however, are also easily distinguished because they involve affirmative misrepresentations made in the solicitation of securities. In our case, Weinberg & Green did not solicit any purchase of securities or prepare any solicitation documents. In fact, Rosenberg and the Schatzes worked out the details of the purchase of the business before involving the attorneys for either side. Accordingly, none of these authorities persuade us to adopt a rule contrary to the rule adopted by the Fifth and Seventh Circuits. We hold that unless a relationship of "trust and confidence" exists between a lawyer and a third party, the federal securities laws do not impose on a lawyer a duty to disclose information to a third party.

### b. *Duty of Disclosure Based on Maryland Law*

Plaintiffs also claim that the Maryland Rules of Professional Conduct obligated Weinberg & Green to either withdraw from representing Rosenberg or to disclose his financial misrepresentations to the plaintiffs. In support of this claim, plaintiffs' counsel submitted to the Maryland State Bar Committee on Ethics an anonymous request for an ethics ruling on the facts of the present case. The committee concluded that a law firm in Weinberg & Green's position had an ethical duty to either withdraw from representation or disclose the misrepresentations to the third person. This ethical responsibility, plaintiffs argue, establishes a legal duty to disclose and subjects Weinberg & Green to section 10(b) liability.

■ We reject this argument. An ethical duty of disclosure does not create a corresponding legal duty under the federal securities laws. Courts have consistently refused to use ethical codes to define standards of civil liability for lawyers. *See, e.g., Bickel v. Mackie*, 447 F.Supp. 1376,

1383–84 (N.D.Iowa), *aff'd mem.*, 590 F.2d 341 (8th Cir.1978); *Merritt–Chapman & Scott Corp. v. Elgin Coal, Inc.*, 358 F.Supp. 17, 22 (E.D.Tenn.1972), *aff'd mem.*, 477 F.2d 598 (6th Cir.1973). More specifically, courts have refused to base a legal duty of disclosure for section 10(b) on a disciplinary rule. In *Tew v. Arky, Freed, Stearns, Watson, Greer, Weaver, & Harris, P.A.*, 655 F.Supp. 1573 (S.D.Fla.1987), *aff'd mem.*, 846 F.2d 753 (11th Cir.), *cert. denied*, 488 U.S. 854, 109 S.Ct. 142, 102 L.Ed.2d 114 (1988), the court held that violation of a disciplinary rule did not create a legal duty requiring a law firm to disclose information it had learned in a prior business meeting to a client's auditors.

■ The rationale for these rulings is clear. The ethical rules were intended by their drafters to regulate the conduct of the profession, not to create actionable duties in favor of third parties. The preliminary statement to the Model Code, upon which the Maryland code is patterned, warns that the Code does not "undertake to define standards for civil liability of lawyers for professional conduct." Preliminary Statement, Model Code of Professional Responsibility. We believe this statement accurately reflects the goals and purposes of the Maryland Code of Professional Responsibility. Thus, we hold that the ethical rules do not create a legal duty of disclosure on lawyers and that plaintiffs cannot base a securities fraud or other misrepresentation claim on a violation of an ethical rule.

■ We also hold that Maryland common law does not impose a duty to disclose under these circumstances. In the negligence context, Maryland courts have held that a lawyer only owes a duty to his clients or third party beneficiaries of the attorney-client relationship. *See Flaherty v. Weinberg*, 303 Md. 116, 492 A.2d 618 (1985). Applying such rule to the facts of this case, we hold that because plaintiffs were neither clients nor third party benefi-

ciaries of the attorney-client relationship, Weinberg & Green had no duty to disclose.

Plaintiffs rely on *Crest Investment Trust, Inc. v. Comstock,* 23 Md.App. 280, 327 A.2d 891 (1974), to establish a common law duty of disclosure for lawyers. However, this case says nothing about whether an attorney owes a duty of disclosure to persons who are not his clients. *Comstock* involved a lawyer who had a conflict of interest because he tried to represent both sides in a transaction, and, therefore, the lawyer owed a duty of disclosure to both sides. Thus, *Comstock* does not impose a duty of disclosure on a lawyer to a third party the lawyer does not represent. In this case, plaintiffs do not allege that Weinberg & Green represented them; in fact, plaintiffs admit that they were represented by their own chosen lawyers. Thus, the facts of *Comstock* are not analogous to this case.

### c. *Duty of Disclosure Based on Public Policy*

 Precedent aside, plaintiffs also argue that, as a matter of public policy, lawyers should not be permitted to perpetrate or assist in a fraud without being held responsible for their wrongdoing. Plaintiffs' counsel urges the court to rule that a lawyer has a duty to disclose misrepresentations to innocent third parties on the basis of public policy. While we sympathize with plaintiff's position and certainly do not condone lawyers making misrepresentations, we find that public policy counsels against imposing such a duty. Attorney liability to third parties should not be expanded beyond liability for conflicts of interest. *See Flaherty,* 492 A.2d at 626. Any other result may prevent a client from reposing complete trust in his lawyer for fear that he might reveal a fact which would trigger the lawyer's duty to the third party. Similarly, if attorneys had a duty to disclose information to third parties, attorneys would have an incentive not to press clients for information. The net result would not be less securities fraud. Instead, attorneys would more often be unwitting accomplices to the fraud as a result of being kept in the dark by their clients or by their own reluctance to obtain information. The better rule—that attorneys have no duty to "blow the whistle" on their clients—allows clients to repose complete trust in their lawyers. Under those circumstances, the client is more likely to disclose damaging or problematic information, and the lawyer will more likely be able to counsel his client against misconduct.

Other federal courts have arrived at similar conclusions in addressing the policy concerns of this identical issue. The Fifth Circuit explained that

> It is well understood in the legal community that any significant increase in attorney liability to third parties could have a dramatic effect upon our entire system of legal ethics. An attorney required by law to disclose "material facts" to third parties might thus breach his or her duty, required by good ethical standards, to keep attorney-client confidences. Similarly, an attorney required to declare publicly his or her legal opinion of a client's actions and statements may find it impossible to remain as loyal to the client as legal ethics properly require.

*Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1124 (5th Cir.1988), *vacated on other grounds,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989) (footnotes omitted).

Likewise, the Seventh Circuit, in the accounting context, refused to impose a duty of disclosure based upon policy reasons:

> Such a duty would prevent the client from reposing in the accountant the trust that is essential to an accurate audit. Firms would withhold documents, allow auditors to see but not copy, and otherwise emulate the CIA, if they feared that access might lead to destructive disclosure—for even an honest firm may fear that one of its accountant's many auditors would misunderstand the situation and ring the tocsin needlessly, with great loss to the firm.

*DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990) (accountant under no legal duty to blow whistle on client upon discovery that client was in financial trouble). Therefore, we hold that public policy interests protected by the attorney-client relationship outweigh any public policy interests served by imposing a duty of disclosure like the one urged by the plaintiffs in this case.

### 2. Affirmative Misrepresentations by Weinberg & Green

Plaintiffs also claim that Weinberg & Green violated section 10(b) by making various affirmative misstatements. Plaintiffs complain that Weinberg & Green informed plaintiffs' attorney that it would supply an update letter which would state that Rosenberg's financial position had not materially changed as of December 31, 1986. Weinberg & Green then presented the update letter to plaintiffs' counsel. The letter misrepresented Rosenberg's financial position, and the agreement and closing documents drafted by Weinberg & Green contained representations made by Rosenberg that the financial statement was "true, correct, and complete in all material respects."

Plaintiffs never contend that Weinberg & Green made any representations other than those made by Rosenberg. In fact, plaintiffs only claim that Weinberg & Green stated that Rosenberg would supply an update letter and that Weinberg & Green forwarded the Rosenberg letter to plaintiffs' attorneys. Since Weinberg & Green made no independent affirmative misstatements, Weinberg & Green did not commit a primary violation of section 10(b). *See Friedman v. Arizona World Nurseries, Ltd.*, 730 F.Supp. 521 (S.D.N.Y.1990) (lawyers who drafted an offering which included an offering memorandum, a legal opinion, and a tax assistance letter not liable for misrepresentations in the offering memorandum since it was not a representation from the law firm). Weinberg & Green's drafting of closing documents which contained representations by Rosenberg does not mean that they warranted or promised that Rosenberg had been honest.[3]

Plaintiffs also argue that Weinberg & Green should be liable for the affirmative misrepresentations that Rosenberg made under principles of agency law. *See* Restatement (Second) of Agency § 348 ("[a]n agent who fraudulently makes representations, ... or knowingly assists in the commission of tortious fraud ... by his principal ... is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal."). Plaintiffs apparently believe that, under general principles of agency law, whenever a lawyer incorporates a representation by a client into a letter, contract, or other document, the representation becomes the lawyer's as well as the client's. This argument inherently presents two issues: first, as a matter of law, whether an attorney-client relationship should be treated as a typical agent-principal relationship governed by the general laws of agency; and second, as a matter of fact, whether Weinberg & Green "knowingly assisted" Rosenberg in his fraud in its status as his agent as required by the

---

**3.** Plaintiffs argue that *Bonavire v. Wampler*, 779 F.2d 1011, 1014–15 (4th Cir.1985) requires that Weinberg & Green be held liable for misrepresentation. In *Wampler,* we affirmed a jury verdict finding an attorney liable for misrepresentation that a promoter was an "honest straightforward businessman." However, the facts of *Wampler* differ significantly from the facts of this case. In *Wampler,* the attorney himself made personal affirmative representations about the promoter. Moreover, the attorney was actually involved in the deal. First, the attorney acted as the escrow agent for the parties, thereby creating a potential conflict of interest. Second, the attorney made affirmative representations to the plaintiffs regarding personal and business information about the defendants. In our case, however, Weinberg & Green only "papered the deal," and did not participate in negotiation or solicitation as did the attorneys in *Wampler*. In fact, Rosenberg and the Schatzes worked out the details before consulting with their respective attorneys. Second, Weinberg & Green did not make any affirmative representations about Rosenberg to plaintiffs; rather, the law firm only put Rosenberg's representations to paper. Finally, the plaintiffs in *Wampler* clearly relied upon the affirmative representations of the attorney in closing the deal; in our case, plaintiffs relied upon Rosenberg's representations which Weinberg & Green had put on paper.

Restatement section. We are reviewing only the legal sufficiency of the complaint, we, therefore, will only consider the first issue which requires a ruling of law.

■■■■ There are numerous similarities between an attorney-client relationship and an agent-principal relationship, and a lawyer may act as an agent for a client in various financial transactions, such as when the lawyer negotiates the terms of the transaction for the client. However, the fact that an attorney is an agent in that he represents his client does not automatically make the attorney liable under agency law for misrepresentations his client makes. Regardless of what plaintiffs wish the law required of lawyers, lawyers do not vouch for the probity of their clients when they draft documents reflecting their clients' promises, statements, or warranties. Thus, Weinberg & Green's alleged transmission of Rosenberg's misrepresentations does not transform those misrepresentations into the representations of Weinberg & Green.

In *Friedman v. Arizona World Nurseries, Ltd.*, 730 F.Supp. 521 (S.D.N.Y.1990), the court considered whether to dismiss a complaint under Section 10(b) and Rule 10b–5 against a law firm that drafted an offering memorandum and a legal opinion and tax assistance letter included in the memorandum. The court determined that, with respect to "the only parts of the memorandum which arguably contain representations from [the law firm] to the limited partners"—the legal opinion and the tax assistance letter—plaintiffs failed to identify any misrepresentations. *Id.* at 533–34. As for the remainder of the offering memorandum, the court declared that "counsel who merely draft [an offering memorandum] cannot be held liable for the general statements in the offering memorandum not specifically attributed to them." *Id.* at 533.

We find this reasoning persuasive[4] and therefore hold that a lawyer or law firm cannot be liable for the representations of a client, even if the lawyer incorporates the client's misrepresentations into legal documents or agreements necessary for closing the transaction. In this case, Weinberg & Green merely "papered the deal," that is, put into writing the terms on which the Schatzes and Rosenberg agreed and prepared the documents necessary for closing the transactions. Thus, Weinberg & Green performed the role of a scrivener. Under these circumstances, a law firm cannot be held liable for misrepresentations made by a client in a financial disclosure statement.

B. *Liability for aiding and abetting a violation of the securities laws*

■■■ Plaintiffs make claims for aider and abettor liability under sections 12(2) and 10(b) of the 1934 Securities Act. Both causes of action require the plaintiff to prove the following three elements to establish an aiding and abetting securities violation: (1) a primary violation by another person; (2) the aider and abettor's "knowledge" of the primary violation; and (3) substantial assistance by the aider and abettor in the achievement or consummation of the primary violation. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir.1985); *Martin v. Pepsi–Cola Bottling Co.*, 639 F.Supp. 931, 934–35 (D.Md.1986); *In re Action Industries Tender Offer*, 572 F.Supp. 846, 853 (E.D.Va.1983). Without deciding whether the plaintiffs have adequately plead a primary violation by Rosenberg, we hold that the plaintiffs have not alleged facts establishing that Weinberg & Green possessed the requisite "knowledge" of a securities violation or that Weinberg & Green "substantially assisted" a securities violation. Thus, plaintiffs' aiding and abet-

---

**4.** The two cases that plaintiffs rely upon to support their "agency law" theory are inapposite. In neither case did the court impose liability on an attorney who drafted legal documents containing his client's representations and for his client's signature. *See Bechtel v. Liberty National Bank*, 534 F.2d 1335, 1339 n. 6 (9th Cir.1976) (holding banker liable for misrepresentations made as agent); *Hagar v. Mobley*, 638 P.2d 127

ting claims fail.[5]

### 1. Scienter

■ First, we address plaintiffs' allegation that Weinberg & Green possessed the requisite "knowledge" or scienter of a securities violation required for aider and abettor liability. In their complaint, the Schatzes allege that Weinberg & Green "knowingly and/or recklessly provided substantial assistance" to the fraud. This allegation, argue the plaintiffs, meets the scienter requirement and adequately states a cause of action for aider and abettor liability. However, an evaluation of the "knowledge" requirement of the aiding and abetting liability test turns upon whether the aider and abettor defendant owed a duty to the plaintiff. When there is no duty running from the alleged aider and abettor to the plaintiff, the defendant must possess a "high conscious intent" and a "conscious and specific motivation" to aid the fraud. *See IIT, an Internat'l Invest. Trust v. Cornfeld,* 619 F.2d 909, 925 (2d Cir.1980); *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 97 (5th Cir.1975); *Martin v. Pepsi–Cola Bottling Co.,* 639 F.Supp. 931, 934–35 (D.Md.1986).

■ We have already held that Weinberg & Green had no duty of disclosure, arising under either the federal securities laws or Maryland state law, to inform the Schatzes that Rosenberg's financial status had changed. Accordingly, plaintiffs must allege that Weinberg & Green had a "conscious and specific motivation" to aid and abet the fraud to state a cause of action for

aider and abettor liability. Plaintiffs have not, and in the opinion of the district judge, could not allege such a level of scienter. Therefore, the complaint fails to state a cause of action against Weinberg & Green for aider and abettor liability.

### 2. Substantial Assistance

We also hold that plaintiffs have not pled an aider and abettor claim, because plaintiffs have not adequately alleged that Weinberg & Green "substantially assisted" Rosenberg in the fraud. Plaintiffs claim that Weinberg & Green "substantially assisted" Rosenberg's fraudulent activity in two ways: first, Weinberg & Green substantially assisted the fraud by failing "to either disclose or correct the misrepresentations or to withdraw from the representation of Rosenberg and/or MER" and second, Weinberg & Green substantially assisted the fraud by "participating in negotiations, drafting documents and conducting the Closing at its offices."

■ We first address whether Weinberg & Green can be liable for aider and abettor liability for failing to disclose Rosenberg's misrepresentations to the Schatzes. Absent a duty to disclose, allegations that a defendant knew of the wrongdoing and did not act fail to state an aiding and abetting claim. *See In re Gas Reclamation, Inc. Sec. Lit.,* 659 F.Supp. 493 (S.D.N.Y.1987) (allegations that defendant accounting firm knew of alleged fraud and failed to disclose it or otherwise stop scheme failed to state an aiding-abetting claim); *Quintel Corp. v. Citibank,* 589

---

(Wyo.1981) (holding realtor liable for misrepresentations made as an agent).

**5.** Because we hold that Weinberg & Green did not substantially assist Rosenberg in his fraudulent activity, plaintiffs cannot assert an aider and abettor claim under section 12(2) or 10(b). Accordingly, we do not decide whether the fact that plaintiffs are not "statutory sellers" would prevent them from asserting a claim under section 12(2). In *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), the Supreme Court held that section 12(1) can only be applied to statutory sellers, i.e., those who actually solicit securities purchases. Although the Court expressly reserved the question of aider and abettor liability under section 12(2) for non-

statutory sellers, *see id.* at 648–49 n. 24, 108 S.Ct. at 2079 n. 24, several lower courts have extended *Dahl* to limit aider and abettor liability under section 12(2) to statutory sellers of securities as well. *See, e.g., In re Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628 (3d Cir.1989); *Wilson v. Saintine Exploration & Drilling Corp.,* 872 F.2d 1124 (2d Cir.1989). We have not previously decided whether, in light of *Pinter,* aider and abettor liability under section 12(2) should be limited to statutory sellers. *See Baker, Watts & Co. v. Miles & Stockbridge,* 876 F.2d 1101, 1106 n. 3 (4th Cir.1989) (citing *Pinter* and *Wilson,* but not deciding whether law firm was "seller" under section 12(2) so as to be liable for aider and abettor liability).

F.Supp. 1235, 1245 (S.D.N.Y.1984) (allegations that attorney remained silent to aid his client's fraud did not adequately plead an aider and abettor claim because complaint never alleged that attorney "had a direct involvement in the transaction or deliberately covered up the fraud"). We have already held that Weinberg & Green owed no duty to disclose Rosenberg's misrepresentations to the Schatzes; thus, Weinberg & Green cannot be held liable as aiders and abettors for failing to disclose this information.

The plaintiffs also allege that Weinberg & Green provided substantial assistance to Rosenberg by representing him in the transaction. They argue that a lawyer provides "substantial assistance" in aiding and abetting tortious conduct if he prepares or disseminates documents containing material misrepresentations or omissions. However, the "substantial assistance" element requires that a lawyer be more than a scrivener for a client; the lawyer must actively participate in soliciting sales or negotiating terms of the deal on behalf of a client to have "substantially assisted" a securities violation. In other words, a plaintiff must prove that a defendant rendered "substantial assistance" to the primary securities law violation, not merely to the person committing the violation.

■ If a lawyer, for example, is a member of the investment group, acts as an general agent for the investment group and not merely its attorney, or actively participates in the transaction by inducing or soliciting sales or by negotiating terms of the deal, the lawyer may be held liable for substantially assisting a securities violation. However, when a lawyer offers no legal opinions or affirmative misrepresentations to the potential investors and merely acts a scrivener for the investment group, the lawyer cannot be liable as a matter of law for aider and abettor liability under the securities laws without an allegation of a conscious intent to violate the securities laws. *See Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 96 (5th Cir. 1975) (when "transactions constitut[e] the daily grist of the mill," courts are "loathe

to find 10b–5 liability without clear proof of intent to violate the securities laws"); *see also Stokes v. Lokken*, 644 F.2d 779, 784 (8th Cir.1981) (attorney's tangential involvement in securities transaction insufficient for aiding and abetting claim).

In this case, Weinberg & Green did no more than "paper the deal" or act as a scrivener for Rosenberg. These activities cannot form the basis for a securities violation since plaintiffs never allege any facts tending to show an intent on Weinberg & Green's part to violate the securities laws. While it is true that some of Rosenberg's documents prepared by Weinberg & Green (on the basis of information provided by Rosenberg) were misleading, this fact alone does not meet the "substantial assistance" threshold. Otherwise, there would be a *per se* rule holding attorneys liable in every securities fraud case, because in virtually every transaction, attorneys draft the closing documents. Clearly, the fact that an attorney drafts a closing document does not automatically create a warranty that every statement and agreement made by the client is true. Any other result would make attorneys co-guarantors and co-signatories, along with their clients, in every securities transaction.

C. *Liability for knowingly or recklessly perpetuating a misrepresentation under Maryland tort law*

■ Count VII of the plaintiffs' complaint purports to state a cause of action for common law misrepresentation under Maryland law. Under Maryland law, concealment of material facts renders a party liable for fraud. *Parish v. Maryland & Virginia Milk Producers Ass'n.*, 250 Md. 24, 242 A.2d 512, 539 (1968), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). However, a plaintiff cannot state a claim for misrepresentation based upon a failure to disclose unless the defendant had a duty to disclose. *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 389 A.2d 887, 903 (1978) ("nondisclosure does not constitute fraud unless there exists a duty of disclosure"); *Fowler v. Benton*, 245 Md. 540, 226 A.2d 556, 562 (1967) (without legal duty to disclose defect, de-

fendant cannot be held liable for misrepresentation), *cert. denied,* 389 U.S. 851, 88 S.Ct. 42, 19 L.Ed.2d 119 (1967); *Walsh v. Edwards,* 233 Md. 552, 197 A.2d 424, 427 (1964) (mere silence or nondisclosure, not accompanied by any misstatements, does not constitute actionable fraud). We have already held that Weinberg & Green had no duty of disclosure, arising either from federal securities law or Maryland state law, to inform the Schatzes that Rosenberg's financial status had changed. Accordingly, plaintiffs cannot recover for misrepresentation under state tort law.

## IV.

The extent of a law firm's liability for knowingly incorporating a client's misrepresentations into closing documents for a financial transaction presents troubling legal issues. However, we do not sit as an ethics or other attorney disciplinary committee, but as a civil court with a duty to interpret the securities laws, and the solution to these legal issues cannot be found in the securities laws. As the Seventh Circuit stated in *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490 (7th Cir.1986):

> We express no opinion on whether the [law firm] did what [it] should, whether there was malpractice under state law, or whether the rules of ethics ... ought to require lawyers and accountants to blow the whistle in equivalent circumstances. We are satisfied, however, that an award of damages under the securities laws is not the way to blaze the trail toward improved ethical standards in the legal and accounting professions. Liability depends on an *existing* duty to disclose. The securities laws therefore must lag behind changes in ethical and fiduciary standards.

*Id.* at 497 (emphasis in original). We agree with this statement of policy and affirm the order of the district court.

*AFFIRMED.*