**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIE HAROLD BROWNING,
Plaintiff-Appellant,

v.                                                                 No. 95-2895

THE WASHINGTON POST COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
Henry M. Herlong, Jr., District Judge.
(CA-95-2687-7-20)

Argued: June 6, 1996

Decided: August 6, 1996

Before WILLIAMS and MICHAEL, Circuit Judges, and
JACKSON, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James B. Richardson, Jr., SVALINA, RICHARDSON &
SMITH, Columbia, South Carolina, for Appellant. Kevin Taylor
Baine, WILLIAMS & CONNOLLY, Washington, D.C., for Appellee.
**ON BRIEF:** Stephen D. Schusterman, Rock Hill, South Carolina;
James R. Honeycutt, Fort Mill, South Carolina, for Appellant. Katha-
rine B. Weymouth, WILLIAMS & CONNOLLY, Washington, D.C.;

Jerry Jay Bender, BAKER, BARWICK, RAVENEL & BENDER, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Willie Browning appeals the decision of the district court that granted the Washington Post Company's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Browning initiated this action for defamation stemming from a newspaper article, published by the Washington Post Company (the "Post"), which identified Browning as an individual questioned in connection with a carjacking and kidnapping.

I.

The Post published the article on November 7, 1994 following the discovery of the missing children of Susan Smith in Union, South Carolina. Gary Lee, Black Residents Angered by Reaction to False Story: "No One Has Rushed Forward to Apologize," WASH. POST, Nov. 7, 1994, at A10. Smith had alleged that an African-American man hijacked her car while her two children were in the car. The Post published the article after Smith confessed to drowning her children and to fabricating the story about an African-American man abducting her children. The article begins with the statement that the incident had provoked uneasiness and a sense of betrayal among African-Americans. Id. Part of the "lead-in" to the portion of the article about which Browning complains indicates that "[p]olice responded to Smith's accusations by launching a search for the alleged carjacker among local blacks." Id. The portion of the article that refers to Browning is as follows:

2

> Soon after Smith reported her sons missing, Union police arrived early one morning at the home of Harold Browning, a local African American construction worker. They questioned him for a couple of hours and released him.
>
> At least a half dozen other local black males were detained, a police source acknowledged. And police also started going from door to door in Union's black community looking for information in the case.
>
> "I was scared at first," Browning said. "I knew I didn't do it, but people started to look at me kind of funny after that."

Id. Browning alleges that this portion of the article is completely false. He further alleges that the Post knew that the statements were false or acted with reckless disregard as to the truth or falsity of the statements. Browning charges that the publication defamed him by insinuating that he had been the object of the police's suspicions. He argues that the article held him up to and caused public shame, contempt, and obloquy.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court dismissed the complaint because it determined that the article is "not reasonably susceptible of a defamatory meaning."* (J.A. at 23.) The district court cited Pierce v. Northwestern Mut. Life Ins. Co., 444 F. Supp. 1098, 1101 (D.S.C. 1978) for the proposition that it is the function of the court to determine whether a statement is susceptible of a defamatory meaning and that in making that determination, the court must consider the context of the entire article.

II.

We review de novo the district court's dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Proce-

_____

*Browning's response to the Post's motion to dismiss was due on September 6, 1995, and on September 18, 1995, he filed a motion for an extension of time. (J.A. at 22.) In its order granting the motion to dismiss, the district court denied Browning's request for an extension. (J.A. at 23.)

3

dure. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991), cert. denied, 503 U.S. 936 (1992). Rule 12(b)(6) provides a defense to a lawsuit where the plaintiff fails to state a claim upon which relief can be granted. When "passing on a motion to dismiss . . . for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The facts set forth in the complaint must be assumed to be true. Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Furthermore, "a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Id.

III.

As the district court did, we must first consider the article in its entirety and then determine whether the portion of the article about which Browning complains is susceptible of a defamatory meaning. Pierce v. Northwestern Mut. Life Ins. Co., 444 F. Supp. 1098, 1101 (D.S.C. 1978). "[A]n alleged defamatory statement must be determined from the document or material as a whole, from beginning to end, and words cannot be singled out as libelous, but rather, the material must be libelous within the context of the entire writing." Id.

Having reviewed the article, we concur with the district court's determination that the article is not susceptible of a defamatory meaning. As discussed below, we reject Browning's arguments.

Browning argues that the article implies to the ordinary reader that the police had some basis for believing that he may have been involved in the crime, that he was guilty, or that he was "one of `the usual suspects' to be rounded up and questioned when a major and notorious crime has been committed." (Appellant's Br. at 6.) Citing Warner v. Rudnik, 313 S.E.2d 359, 360 (S.C. 1984), the Post counters that the words, given their plain and ordinary meaning, are not defamatory. In Warner, the Court of Appeals of South Carolina cited its Supreme Court as having provided the following guidance for determining whether words are libelous: "`In determining whether words are libelous, they are to be given their ordinary and popular meaning . . . . If the words are plainly libelous or wanting in any defamatory

4

signification, it is the province and duty of the court to say so.'" <u>Warner</u>, 313 S.E.2d at 360. The Post's defense is that, read in context, the words are not susceptible of defamatory meaning. The district court agreed with the Post and found that "[t]he only reasonable interpretation of the article is that the black community suffered from the false accusation made by Susan Smith that a black man had abducted her children. Browning was simply portrayed as an example of how Susan Smith's accusation affected innocent citizens." (J.A. at 23.) The article does not imply or raise a strong suspicion that Browning was involved in the crime. The article instead characterizes Browning as one of the unfortunate individuals whom the police chose to question based solely upon Smith's false accusations and his race.

Browning further contends that the district court invaded the province of the jury: determining whether a communication, capable of a defamatory meaning, was so understood by its recipient. However, Browning ignores that the district court, as the gate-keeper, first had to determine whether the article is capable of bearing the meaning that Browning ascribes to it and whether that meaning is defamatory. Restatement (Second) of Torts § 614 (1977). If the district court had found the communication capable of bearing a defamatory meaning, then a jury would have decided whether the communication is so understood by readers. <u>Id.</u> The district court did not find, as Browning argues, that the article is capable of implying that the police reasonably suspected Browning or that he was one of "the usual suspects." Reading the <u>entire</u> article, we also do not find that the article is susceptible of a defamatory meaning.

IV.

Accordingly, for the reasons stated above, we affirm the judgment of the district court.

<u>AFFIRMED</u>

5