# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PLANNED SYSTEMS INTERNATIONAL,
INCORPORATED,

$\qquad$ *Plaintiff-Appellant,*

v.

FEDERAL TECHNOLOGY CORPORATION,
$\qquad$ *Defendant-Appellee.*

⎫
⎬
⎭

No. 02-1446

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude H. Hilton, Chief District Judge.
(CA-01-1631-A)

Argued: April 3, 2003

Decided: July 25, 2003

Before WILLIAMS and MICHAEL, Circuit Judges, and
Terry L. WOOTEN, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** James Kevin Kearney, REED SMITH, L.L.P., Washington, D.C., for Appellant. Alan Leonard Briggs, SQUIRE, SANDERS & DEMPSEY, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** David T. Hickey, REED SMITH, L.L.P., Washington, D.C., for Appellant. John A. Howell, SQUIRE, SANDERS & DEMPSEY,

L.L.P., Washington, D.C.; Dennis Dean Kirk, Falls Church, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Plaintiff-Appellant Planned Systems International, Inc. (hereinafter "PSI"), a Pennsylvania corporation, filed a two count diversity of citizenship breach of contract action against Defendant-Appellee Federal Technology Corporation (hereinafter "FedTec"), a Virginia corporation, in the United States District Court for the Eastern District of Virginia. Count I of the complaint alleged that FedTec breached its contractual obligation under Clause 27 of the subcontract to avoid certain conflicts of interest with PSI.[1] The District Court dismissed Count I of the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Final Order of dismissal was entered by the District Court on March 28, 2002.[2] PSI appeals to this Court from this final order of the District Court, as well as the underlying order dated December 14, 2001. For the reasons below, we affirm.

I.

On October 20, 2000, the Department of the Interior solicited bids for a contract to provide security management and technical support

---

[1]Count II, which alleged that FedTec breached its contractual obligations by soliciting PSI's employees, is not a subject of this appeal.

[2]On March 27, 2002, PSI filed a consent motion for Dismissal of Count II. Since Count I was dismissed by the Court on December 14, 2001, the dismissal of Count II constituted a dismissal of plaintiff-appellant's case.

services for certain military health systems programs beginning November 1, 2000, and ending October 31, 2001. PSI bid on and was awarded the contract to provide these services. PSI entered into a sub-contract with FedTec effective September 25, 2000. Under the sub-contract, FedTec was to deliver a portion of the services required to be delivered by PSI under the 2000 GSA schedule order, referred to in the subcontract as the prime contract. In the subcontract, PSI and FedTec agreed to a conflict of interest clause. The clause in the sub-contract contained the following relevant language:

27     Conflict of Interest

27.1    During the term of this subcontract the Subcontractor shall not directly or indirectly engage in soliciting the sale to or performance of services being delivered under this agreement to the Customer. This does not preclude the Subcontractor from pursuing interests outside the scope of this subcontract statement of work and the prime contract statement of work.

27.2    During the term of this subcontract, the Subcontractor shall refrain from all activities that would jeopardize and/or be detrimental to PSI's on-going or future activities under the contract for which this Subcontract is issued.

In September 2001, prior to the expiration of the 2000 GSA schedule order, and during the term of the subcontract, the Department of the Army solicited bids for a contract to perform security management and technical support services for certain military health systems programs beginning October 1, 2001, and continuing until March 31, 2002, with the possibility of four contract renewals of six months each. Both PSI and FedTec submitted a bid for this contract. FedTec was awarded the contract.

Subsequently, PSI filed its Complaint in the District Court alleging that Clause 27, in the September 25, 2000 subcontract between the parties, prohibited FedTec from soliciting for and competing with PSI for the September 2001 contract. FedTec filed a Rule 12(b)(6) motion to dismiss Count I for failure to state a claim upon which relief could

be granted. On December 14, 2001, the District Court held a hearing on the outstanding motion to dismiss. The District Court granted the motion to dismiss Count I, finding that the language of Clause 27 was clear and unambiguous and restricted in its effect solely to the scope of the subcontract.

PSI filed a timely notice of appeal.

## II.

In reviewing a district court's order dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6) for plaintiff's "failure to state a claim upon which relief can be granted," this court determines *de novo* whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient. *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000); *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991); *see also* Fed.R.Civ.P. 8(a)(2) (establishing as a pleading requirement that a claim contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). Because only the legal sufficiency of the complaint, and not the facts in support of it, is tested under a Rule 12(b)(6) motion, we assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts. *See Schatz*, 943 F.2d at 489. Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. *See generally* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990 & 1998 Supp.). With these standards in hand, we now turn to the complaint at issue in this case.

## III.

The parties agreed that the law of the state of Maryland applies in this case.[3] Maryland Courts have recognized the general rule that

---

[3]The subcontract between PSI and FedTec included a choice of law provision that indicated that "[t]he construction, interpretation and performance of this subcontract shall be governed by and construed in accordance with the domestic laws of the State of Maryland . . . ."

"[t]he question of whether a contract is ambiguous ordinarily is determined by the court as a question of law." *Calomiris v. Woods*, 353 Md. 425, 434-438, 727 A.2d 358, 362-364 (Md. 1999).

In determining whether a writing is ambiguous, Maryland has long adhered to the law of the objective interpretation of contracts. Under the objective view, a written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning. *Id*. at 435-436. The determination of whether language is susceptible of more than one meaning includes a consideration of "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Id*. Therefore, when interpreting a contract the court's task is to:

> "[D]etermine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean."

*General Motors Acceptance v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985).

This Court has carefully reviewed the language of Clause 27, which is at issue in this case, and the District Court's analysis of the relevant language.[4] The contractual language states that FedTec

---

[4]On appeal, appellant raises the issue of whether the District Court's dismissal of Count I of the complaint was an improper exercise of its authority under Rule 12(b)(6). In reviewing the action taken by the District Court, this Court finds that the District Court recognized and applied the correct standard for a Rule 12(b)(6) motion. Additionally, this Court

agreed to refrain from "soliciting the sale to or performance of the services being rendered under this agreement to the customer." The language indicates that FedTec and PSI also agreed that "[t]his does not preclude subcontractor from pursuing interests outside the scope of this subcontract statement of work and the prime statement of work."

The District Court found that ". . . [clauses] 27.1 and 27.2 are clear and unambiguous, and they are restricted in their effect solely to the scope of the subcontract. The language makes that unmistakably clear." In analyzing this agreement, we find that the District Court correctly applied Maryland law of objective interpretation of contracts. Additionally, we agree with the District Court's conclusion that there is no ambiguity in Clause 27 and that reasonable persons in the position of the parties would have reached the same conclusion.

The conflict of interest provision, Clause 27, would prohibit FedTec "[d]uring the term of this subcontract" from "soliciting . . . services being delivered under this agreement." We agree with the District Court's analysis of this language and its conclusion that solicitation by FedTec was only prohibited during the "term of this subcontract" and applied only to services "delivered under this agreement." There is no reasonable basis to conclude that Clause 27 also prohibited FedTec from soliciting "the customer" for services to be delivered under *other* contracts. This Court concludes that the District Court was correct, and likewise finds, that Clause 27 is limited to a specific time period by its reference to the statement of work and the prime contract, both of which were for definite terms.

Further, language in Clause 27 did not "preclude" FedTec "from pursuing interests outside the scope" of the subcontract and prime

---

finds that no facts outside of the pleadings were submitted by FedTec or considered by the District Court in deciding the motion to dismiss. Even if facts outside of the pleadings were submitted, it was harmless error, with no prejudice alleged or proven by PSI. *See In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287-289 (3rd Cir. 1999) (finding that a district court's failure to provide notice of conversion of a Rule 12(b)(6) motion to a Rule 56 motion is harmless error if the plaintiff's complaint would not have survived a motion to dismiss).

contract. Considering this language in the subcontract, any new contract sought by FedTec, to be performed at some future time, would be outside of the finite time period of the original prime contract and the subcontract between PSI and FedTec. Accordingly, any such new contract would be outside of "the scope" of the prime contract and subcontract.

In summary, this Court finds that FedTec agreed with PSI that during the period the prime contract and subcontract were in effect, it would not solicit "the Customer" in relation to the services to be sold or performed under the agreement during that same time period. But, the unambiguous language in both Clause 27.1 and 27.2 allow FedTec to solicit the "sale [or] performance" of services under another contract during a separate and distinct time period.

Having reviewed *de novo* the language of Clause 27, and having had the benefit of the parties' briefs, as well as oral argument, we conclude that the District Court did not err in dismissing Count I based on its ruling that Clause 27 was clear and unambiguous. Accordingly, we affirm.

*AFFIRMED*