996 F.2d 1211
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Randy Allen ORGA; Dusty Stanaway, Plaintiffs-Appellants,
v.
Preston S. WILLIAMS, Individually and in his capacity as
Sheriff of York County, Defendant-Appellee.
 No. 92-2315.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 5, 1993.
Decided: June 25, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. John A. MacKenzie, Senior District Judge. (CA-92-64-4)
 Carolyn P. Carpenter, Richmond, Virginia, for Appellants.
 William McCardell Furr, Willcox & Savage, P.C., Norfolk, Virginia, for Appellee.
 Conrad M. Shumadine, Willcox & Savage, P.C., Norfolk, Virginia, for Appellee.
 E.D.Va.
 REVERSED.
 Before RUSSELL and HAMILTON, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 The plaintiffs/appellants, Randy Allen Orga and Dusty Stanaway, former deputy sheriffs in York County, Virginia, brought a 42 U.S.C. § 1983 action in the United States District Court for the Eastern District of Virginia alleging the defendant/appellee, Preston Williams, the Sheriff of York County, terminated the plaintiffs' employment in violation of their First Amendment rights. The district court granted the defendant's motion to dismiss, Fed. R. Civ. P. 12(b)(6), and the plaintiffs appeal. We now reverse.
 
 
 2
 * In this case, the record is comprised solely of a poorly-pleaded complaint. The facts, as set forth in this complaint, are summarized as follows: The defendant is the Sheriff of York County, Virginia. Both plaintiffs were employed as deputy sheriffs by the defendant. Neither of the plaintiffs was in a policymaking or confidential position. Stanaway was a civil process server. Orga was a patrolman, criminal investigator, SWAT team member, and field training officer.
 
 
 3
 In the Fall of 1991, the defendant ran for reelection for the position of Sheriff of York County. The plaintiffs did not support the defendant's candidacy. However, the plaintiffs neither supported nor campaigned for any of defendant's opponents. However, the complaint states, when asked of his opinion in the community as to the best qualified candidate, Stanaway spoke in favor of one of the defendant's opponents. The defendant was successful in his reelection bid. Shortly after his reelection, the defendant terminated the plaintiffs because they did not support his candidacy for the office of Sheriff and because he believed the plaintiffs had worked in support of the candidacy of one [or more] of his opponents. The complaint is not specific as to what Orga said that led to his termination. The complaint merely alleges that Orga, along with Stanaway, was terminated for their speech on a matter of public concern.
 
 
 4
 On May 28, 1992, the plaintiffs filed a complaint in the United States District Court for the Eastern District of Virginia alleging a violation of 42 U.S.C. § 1983. In their complaint, the plaintiffs sought $2 million in compensatory damages and $4 million in punitive damages, costs, and attorneys fees.
 
 
 5
 On June 29, 1992, the defendant, without answering, moved to dismiss. Fed. R. Civ. P. 12(b)(6). On July 17, 1992, the plaintiffs filed a memorandum in response to the defendant's motion to dismiss. On September 10, 1992, the district court granted the defendant's motion to dismiss, opining "[b]ecause sheriffs are responsible for the public safety and because they need support and cooperation of the deputy sheriffs in order to perform their responsibilities effectively, sheriffs should not be required to retain deputy sheriffs who did not support them." Joint Appendix (J.A.) at 41. The plaintiffs noted a timely appeal.
 
 II
 
 6
 When reviewing a district court's decision to dismiss a complaint for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), we apply the de novo standard of review. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991), cert. denied, 112 S. Ct. 1475 (1992); Korb v. Lehman, 919 F.2d 243, 246 (4th Cir. 1990), cert. denied, 112 S. Ct. 51 (1991). Our review is based on the contents of the complaint. When examining the complaint, we must construe all claims in favor of the non-moving party and take the allegations of the complaint as true. Martin Marietta Corp. v. INTELSAT, 978 F.2d 140, 142 (4th Cir. 1992); Schatz, 943 F.2d at 489. We will affirm a dismissal for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 46-47 (1957) (footnote omitted); Schatz, 943 F.2d at 489.
 
 III
 
 7
 The issue in this case is whether the plaintiffs' complaint states a cause of action upon which relief could be granted. A plaintiff states a cause of action under § 1983 when the plaintiff alleges both the deprivation of a federal right and that the defendant acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).[1] The plaintiffs allege the defendant's actions were taken under color of state law. Thus, the only issue that remains is whether the plaintiffs properly pleaded a deprivation of a federal right.
 
 
 8
 The government cannot compel individuals "to relinquish their First Amendment rights as a condition of public employment." Connick v. Myers, 461 U.S. 138, 156 (1985) (Brennan, J., dissenting) (citations omitted). By virtue of the government's legitimate interests in regulating the speech of its public employees, the scope of First Amendment protection afforded a public employee is not the equivalent of those rights afforded an ordinary citizen. Pickering v. Board of Education, 391 U.S. 563, 568 (1968) ("[I]t cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."). Consequently, a balancing test has been developed to determine whether a public employee's First Amendment rights have been violated. Under this test, we must consider whether the speech implicates a matter of public concern. If a matter of public concern was implicated, we must consider "whether the employee's interest in the speech was outweighed by the employer's 'interest in the effective and efficient fulfillment of its responsibilities.' " Joyner v. Lancaster, 815 F.2d 20, 23 (4th Cir.) (quoting Connick, 461 U.S. at 150), cert. denied, 484 U.S. 830 (1987); Pickering, 391 U.S. at 568 ("The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting on matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."). A public employer may nevertheless avoid liability if it can establish that the employment action would have been made in any event for reasons unrelated to the exercise of any First Amendment rights. Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 287 (1977).[2] The outcome of whether the employee's speech is a matter of public concern and whether the employee's interest in free speech was outweighed by the employer's interest in the effective and efficient fulfillment of its responsibilities to the public is a question of law for the court and not for the jury. Joyner, 815 F.2d at 23.[3]
 
 
 9
 * To determine whether speech implicates a matter of public concern, we look to the "content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S at 147-48.[4] We have elaborated on Connick and noted that our inquiry on this score focuses upon "whether the 'public' or the'community' is likely to be truly interested in the particular expression." Berger v. Battagalia, 779 F.2d 992, 998-99 (4th Cir. 1985) (citation omitted), cert. denied, 476 U.S. 1159 (1986). If the speech does not implicate a matter of public concern, there is no First Amendment violation. Jones, 727 F.2d at 1334. The burden is on the employee to demonstrate that the speech involves a matter of public concern. Connick, 461 U.S. at 150.
 
 
 10
 The ease of our discussion here is hampered by the bare-bones record before us. In the case sub judice, the complaint alleges that when asked of his opinion in the community of the most qualified candidate, Stanaway spoke in favor of one of the defendant's opponents. The complaint is not specific as to what Orga said. The complaint merely alleges that Orga was terminated for speech on a matter of public concern. Construing the complaint liberally as we must, the plaintiffs' speech ostensibly pertained to who was the most qualified to be the Sheriff of York County. This type of public employee speech is undoubtedly entitled to the highest form of protection. See Garrison v. Louisiana, 379 U.S. 64, 74-75 (1964) ("[S]peech concerning public affairs ... is the essence of self-government.").
 
 B
 
 11
 Because the speech in this case implicates a matter of public concern, we must further inquire "whether the employee's interest in the speech was outweighed by the employer's 'interest in the effective and efficient fulfillment of its responsibilities.' " Joyner, 815 F.2d at 23 (quoting Connick, 461 U.S. at 150).
 
 
 12
 There are numerous legitimate concerns that a public employer may have that are affected by an employee's speech. These include "discipline and harmony in the workplace, confidentiality, protection from false accusations that may prove difficult to counter given the employee's supposed access to inside information, freedom to discharge an employee whose speech has impeded the performance of his duties or is so lacking in foundation as to call his competence into question, and protection of close working relationships that require loyalty and confidence." Piver v. Pender County Board of Education, 835 F.2d 1076, 1081 (4th Cir. 1987) (citing Pickering, 391 U.S. at 568-73), cert. denied, 487 U.S. 1206 (1988).
 
 
 13
 The Court in Connick admonished that if close working relationships are essential to fulfilling the public employer's public responsibilities, "a wide degree of deference to the employer's judgment is appropriate." Connick, 461 U.S. at 151-52. In Connick, the Court also noted the employee in that case used work time and space, and commented that employee speech that did not do so "might lead to a different conclusion." 461 U.S. at 152 n.13. The Court in Connick also cautioned that where the speech at issue deals directly with matters of public concern, public employers must make an even "stronger showing" of disruption. Connick, 461 U.S. at 152. What type of "stronger showing" Connick requires is not patently clear and manifestly varies with the nature of the employment relationship. Thomas v. Carpenter, 881 F.2d 828, 831 (9th Cir. 1989), cert. denied, 494 U.S. 1475 (1990).
 
 
 14
 Furthermore, there is no "necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." Connick, 461 U.S. at 152; Jurgensen v. Fairfax County, Virginia, 745 F.2d 868, 879 (4th Cir. 1984) (Under Connick, it is not necessary for the agency to prove that morale and efficiency in the agency have actually been adversely affected by the publication; it is sufficient that such damage to morale and efficiency is reasonably to be apprehended."); see also Jones, 727 F.2d at 1334 (court must weigh "the degree of 'public concern' " against "the degree to which the employee's conduct is justifiably viewed by the public employer as an actual or threatened disruption of the conduct of government operations").
 
 
 15
 It is the burden of "the public employer to convince the court that the balance tips in favor of the governmental interest." Id.
 
 
 16
 Another consideration of the balancing required under Connick is the nature of the public employer. See Jurgensen, 745 F.2d at 880 (under Connick, special consideration given to character of police department). In this case, we have before us a paramilitary organization. Employment decisions in paramilitary organizations enjoy considerable deference. Plaintiffs' participation in the Sheriff's department entails, by the very nature of the organization, an abdication of rights to a degree not required of ordinary citizens. Jurgensen, 745 F.2d at 880 ("Non-policy employees can be arrayed on a spectrum from university professors at one end to policemen at the other. State inhibition of academic freedom is strongly disfavored.... In polar contrast is the discipline demanded of, and freedom correspondingly denied to[,] policemen."). Yet that is not to say that by virtue of membership in a paramilitary organization, an individual abdicates all rights to free speech. Rather, membership in such an organization is simply one of the factors to be considered. Id.
 
 
 17
 In conducting the Connick balancing, the defendant also asks us to place reliance on the fact that he is civilly and criminally liable for the acts of his deputies under Virginia law. See Miller v. Jones, 50 Va. (9 Gratt.) 584, 601-02 (1853) (Under Virginia law, sheriffs are liable criminally and civilly for the acts of their deputies).[5] The fact that sheriffs in Virginia are liable both civilly and criminally under Virginia law for the actions of their deputies is neither dispositive of the issue before the court, nor very helpful. The fact that a sheriff is liable under state law has little bearing, if any, on whether the speech involved led to any real threat to, actual disruption of, or potential disruption of, the defendant's interests. This is the gravamen of the balancing inquiry under Connick.[6]
 
 
 18
 In our view, at this stage of the litigation, with such a limited record (the record is composed of only a complaint), the plaintiffs have alleged sufficient facts to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss their § 1983 cause of action. Performing the Connick balancing in this case is particularly difficult because the case is before us on an appeal from the grant of a Fed. R. Civ. P. 12(b)(6) motion and the complaint is no model of clarity.
 
 
 19
 In this case, as alleged in the complaint, we must assume we are dealing with nonpolicymaking/nonconfidential personnel of a paramilitary organization. In addition, the plaintiffs allege their speech did not interfere with the performance of their duties or affect the department's operation. Because we do not know the size of the department-and indeed we do not even know what exactly was said by the plaintiffs-it is difficult to even discern how we can resolve whether the plaintiffs' speech disrupted, or even could be viewed as potentially disruptive of, the operations of the department. Equally troubling is the lack of evidence of the plaintiffs' contact with the defendant during the day-to-day operations of the department and the absence of evidence that plaintiffs' place in the hierarchy of the department required mutual trust and loyalty. In addition, there is no evidence that plaintiffs' speech had an adverse impact on morale, harmony, or discipline. Perhaps most troubling is the fact that the complaint alleges the employment actions were not in response to concerns over the operations of the department, but rather solely because the plaintiffs did not support the defendant and the defendant believed the plaintiffs supported the candidacy of one [or more] of the defendant's opponents. Along this vein, there is simply no evidence in the record demonstrating how the plaintiffs' speech interfered or potentially interfered with the defendant's effective and efficient fulfillment of his duties.
 
 
 20
 Faced with this dearth of evidence, coupled with the fact that plaintiffs' speech was on a matter of purely public concern and was, therefore, entitled to considerable deference in its own right, it would strain credulity to conclude, at this stage of the litigation, that the defendant has met his burden of demonstrating the plaintiffs' interest in free expression was outweighed by his interest in the effective and efficient fulfillment of his responsibilities. Joyner, 815 F.2d at 23; Connick, 461 U.S. at 150; see also Thomas, 881 F.2d at 831 (Under Connick, police department disruption must be real and not imagined.). Thus, it is not "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Conley, 355 U.S. at 46-47; Schatz, 943 F.2d at 489. To hold otherwise, we would have to accept the defendant's invitation to adopt a per se rule that the plaintiffs' statements are not protected under the First Amendment by virtue of their membership in a paramilitary organization and the fact that sheriffs in Virginia are liable under Virginia law for the actions of their deputies. We decline this invitation.[7]
 
 IV
 
 21
 We emphasize our decision should not be construed as an instruction to proceed to trial on the merits. After appropriate discovery, it may appear the plaintiffs cannot prevail as a matter of law. Should that develop, the case may be ripe for summary judgment. However, at this stage of the litigation, with nothing more than a complaint forming the record for our review, we are not called upon to express our opinion on the merits, but rather to determine whether the complaint, when measured against what is required to form the basis of a § 1983 cause of action, alleges a sufficient cause of action to proceed with the litigation. We conclude that, under Fed. R. Civ. P. 12(b)(6), it has. Accordingly, the judgment of the district court is reversed.
 
 REVERSED
 
 
 [1]
 Section 1983 of the Civil Rights Act of 1871 provides, in relevant part:
 Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 42 U.S.C. § 1983.
 
 
 [2]
 The complaint alleges the plaintiffs were terminated because of their speech. Therefore, the motivational requirement established in Mt. Healthy is clearly satisfied. Mt. Healthy, 429 U.S. at 287
 
 
 [3]
 The plaintiffs' complaint alleges they were dismissed on account of their expressive conduct, i.e., speech on a matter of public concern. That being the case, the Connick test rather than the test developed in party affiliation cases such as Branti v. Finkel, 445 U.S. 507 (1980) and Elrod v. Burns, 427 U.S. 347 (1976), is controlling. Jones v. Dodson, 727 F.2d 1329, 1335 n.6 (4th Cir. 1984) ("Where the protected activity involves overt 'expression of ideas,' the more open-ended inquiry prescribed by Pickering and its progeny are required to accomplish the necessary balancing.")
 
 
 [4]
 The content, form, and context of the speech is critical to the Connick inquiry because while speech that "touche[s] upon matters of public concern in a most limited sense ... does not require a [public employer to] tolerate action which he reasonably believe[s] would disrupt the office, undermine his authority, and destroy close working relationships," Connick, 461 U.S. at 154, speech concededly disruptive may nevertheless be protected because it directly touches upon matters of public concern. See, e.g, Pickering, 391 U.S. at 568-75 (criticism of public employer's allocation of public funds and method of informing revenue needs); see also Joyner, 815 F.2d at 24 (Although, the speech itself may be of public concern, "[t]o the extent that a public employee's expression is in furtherance of matters of personal concern, the public employer's burden of showing a predominance of the public's interest in continuing the efficient functioning of the public entity is lessened.")
 
 
 [5]
 Of course, it is universally recognized that the doctrine of respondeat superior does not apply in § 1983 cases
 
 
 [6]
 The fact that plaintiffs may not have a property interest in continued employment by virtue of their at-will employment status, see Jenkins v. Weatherholtz, 909 F.2d 105, 107 (4th Cir. 1990), is also not dispositive. The Supreme Court has held that an untenured teacher whose contract was not renewed could establish a claim for reinstatement for violation of his constitutional rights if he could establish that the decision not to reinstate him was made by reason of his expression. The fact that the teacher had no protected property interest in continued employment was not dispositive because his firing, if retaliatory, effectively deprived him of his constitutionally protected right to free speech. Mt. Healthy, 429 U.S. at 283-84
 
 
 [7]
 We are also persuaded by the fact that the evidence in this case, viewed through a Fed. R. Civ. P. 12(b)(6) prism, is so qualitatively at odds with the evidence in Joyner. In Joyner, the plaintiff was a Captain in the Sheriff's Department of Forsyth County, North Carolina. During the Sheriff's re-election campaign, the plaintiff distributed literature, placed yard signs, and solicited people to vote for the Sheriff's opponent. The Sheriff prevailed in his re-election bid and subsequently discharged the plaintiff. The plaintiff had only two superiors, played an important role in the implementation of policy, and was an essential link between the Sheriff and the deputies whom he supervised. In addition, his speech caused disruption in the department. Finally, the plaintiff's speech was motivated in part by personal concerns. Joyner, 815 F.2d at 21-22. Under these circumstances, we concluded the Connick balance favored the public employer. Id. at 24. Other than the paramilitary organization factor, none of the factors favoring the public employer in Joyner are present here