68 F.3d 460
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Randy Allen ORGA; Dusty Stanaway, Plaintiffs-Appellants,
v.
Preston S. WILLIAMS, Individually and in his capacity as
Sheriff of York County, Defendant-Appellee.
 No. 94-1876.
 United States Court of Appeals, Fourth Circuit.
 Argued May 1, 1995.
Decided Oct. 6, 1995.
 
 ARGUED: Carolyn P. Carpenter, CARPENTER, WOODWARD & WAGNER, P.L.C., Richmond, Virginia, for Appellants. William McCardell Furr, WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appellee.
 Before RUSSELL and WILKINS, Circuit Judges, and LIVELY, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiffs-Appellants Randy Allen Orga and Dusty Stanaway served as deputy sheriffs in the Sheriff's Department of York County, Virginia, until Defendant-Appellee Sheriff Preston S. Williams decided not to reinstate them following his re-election in November 1991. Orga and Stanaway claim that they were not reinstated because they did not support Williams' candidacy for re-election, and that Williams therefore violated their First Amendment rights. They appeal the district court's granting of partial summary judgment in favor of Williams in his individual capacity on the basis of qualified immunity. They also appeal the court's final judgment in favor of Williams in his official capacity. We affirm.
 
 I.
 
 2
 Williams supervised approximately fifty employees in the York County Sheriff's Department in 1991. Williams employed Orga as a patrolman, criminal investigator, SWAT team member, and field training officer. Williams employed Stanaway as a civil process server. Neither Orga nor Stanaway had any supervisory or policymaking duties.
 
 
 3
 In December 1990, Williams promoted Joe Adam to captain, a position that made him Stanaway's immediate supervisor. Although Stanaway admitted during the trial that he had been disappointed and angry at Williams for being passed over for the promotion, he testified that he had gotten over it by the middle of January 1991. Williams, Adam, and several other Sheriff's Department employees, however, testified that Stanaway had sulked over not receiving the promotion for approximately one year and that he would often refuse to speak to Williams for months at a time. Adam testified that he had spoken to Stanaway about his poor attitude but Stanaway's behavior did not change. Adam often complained to Williams about Stanaway's attitude and twice recommended discharging him.
 
 
 4
 In the fall of 1991, Williams ran for re-election against Robert Berryman and Robert Haynes. Williams was re-elected on November 5, 1991. Orga did not participate in the campaign although he testified that he had been asked to do so by Williams' son, Scott. In September 1991, Williams asked Orga about a rumor he had heard that Orga had a "Berryman for Sheriff" sign in his pick-up truck. Orga denied having such a sign and demanded an opportunity to confront his accuser. He testified that Williams had told him that he would be fired if he had the sign in his truck. Major Darrell W. Warren, who attended this meeting, could not recall whether Williams had threatened Orga. Williams testified that he had believed Orga and that he had later learned that it had been a different truck.
 
 
 5
 Stanaway testified that he had not supported Williams during the campaign and that, when asked, he had told people that he supported Haynes. Stanaway did not actively campaign against Williams or overtly campaign for Haynes. He did, however, have his wife write letters to the editor of the local paper under the names of friends and family members, with their permission. These letters supported Haynes' candidacy and criticized Williams' management style. Williams suspected that Stanaway had written the letters because one letter had been signed by Stanaway's sister-in-law. After the letters were published, Williams, Adam, Lieutenant James L. Forester, Jr., and others who had been close friends of Stanaway's began to distance themselves from him. Forester testified that he did not want to be associated with the letters.
 
 
 6
 About a week after the election, Williams and Deputy Mark Medford confronted Stanaway about the letters. Stanaway denied writing the letters, but he did not tell Williams and Medford that his wife had written the letters. Stanaway asked Williams about rumors that he would be terminated because he did not support Williams' campaign. Williams informed him that he may be one of the employees fired for disloyalty.
 
 
 7
 On November 12, 1991, Orga was voted off the SWAT team during a meeting attended by the entire team except Orga. Forester, the team leader, testified that Orga had recently threatened him, and other members testified that Orga had caused disruptions by attempting to run the team. Williams and other officers also testified that Orga had a bad attitude and that he frequently criticized his superiors. Orga admitted that, while in uniform, he had criticized Williams when people in the community asked for his opinion, and that he had often told Williams about his concern that patrol cars did not have safety cages. Orga had once been injured when a prisoner sitting in the back seat of his patrol car kicked him in the face.
 
 
 8
 Orga testified that on December 26, 1991, Williams had informed him that he would not be reinstated as a deputy sheriff because he did not put up election signs and because he complained too much about the need for patrol car cages. Williams denied having told Orga that he had not been reinstated because he had not supported his campaign. Williams testified that he had not reinstated Orga because of his attitude, his public criticism of Williams, his inability to get along with others, and his lack of loyalty and trustworthiness.
 
 
 9
 While out of town for Christmas, Stanaway received a message on his answering machine from Adam that Williams wanted to see him. Orga called Stanaway and told him that Orga had not been reinstated and that Stanaway would not be reinstated as well. Prompted by Orga's warning, Stanaway brought a tape recorder with him when he met with Williams on January 3, 1992. Williams told him that he had not been reinstated because of "the way you've acted toward me from time to time and during the election and what have you." Williams testified that he had not reinstated Stanaway because of his poor attitude, his inability to get along with his coworkers, the harmful effect of his attitude on morale, and his criticisms of Williams, which encompassed more than the letters to the editor.
 
 
 10
 Orga and Stanaway offered evidence at trial that certain Sheriff's Department employees had not been terminated despite serious breaches of discipline. They showed that three employees who had stolen a weed-eater from the Sheriff Department's dispatch office had not been terminated. They also showed that Williams had promoted and hired individuals who had supported his campaign. However, Williams testified that Warren, Mike James, and David Patrick had been reinstated even though he had suspected that they had not sup ported him during the election. In fact, Williams nominated Patrick for Police Officer of the Year and decided to promote him.
 
 
 11
 On May 28, 1992, Orga and Stanaway brought an action under 42 U.S.C. Sec. 1983 against Williams in the United States District Court for the Eastern District of Virginia. Their complaint alleged that Williams terminated their employment in violation of their First Amendment rights of affiliation and expression. The district court granted Williams' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court reversed because we found that the complaint alleged sufficient facts to withstand a motion to dismiss. Orga v. Williams, No. 92-2315, 1993 WL 225269 (4th Cir. June 25, 1993) (per curiam). Orga and Stanaway filed an amended complaint on November 9, 1993. On January 21, 1994, the district court held that qualified immunity barred their claims against Williams in his individual capacity, and therefore it granted Williams' motion for partial summary judgment. The court then denied Orga and Stanaway's request for a jury trial because only a claim for equitable relief in the form of reinstatement remained against Williams in his official capacity.[1] Following a bench trial in January 1994, the court entered judgment in favor of Williams.
 
 II.
 
 12
 We turn first to the district court's judgment on the merits of Orga and Stanaway's claim for reinstatement. Under the First Amendment, public employees have a right not to have their employment adversely affected because they engage in constitutionally protected speech. Rankin v. McPherson, 483 U.S. 378, 383 (1987); Hughes v. Bedsole, 48 F.3d 1376, 1385 (4th Cir.1995). Through a number of cases, the Supreme Court has developed a balancing test to determine whether a public employer unconstitutionally discharged a public employee for protected speech. Connick v. Myers, 461 U.S. 138 (1983); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977); Pickering v. Board of Educ., 391 U.S. 563 (1968); see Hughes, 48 F.3d at 1385 (summarizing the components and burden shifting of the balancing test). The public employee has the initial burden of demonstrating that protected speech: (1) involved a matter of public concern, Connick, 461 U.S. at 145-49; and (2) constituted a "substantial" or "motivating factor" in the adverse employment decision, Mt. Healthy, 429 U.S. at 287. If the employee meets this initial burden, then the burden shifts to the public employer to show by a preponderance of the evidence that the employer would have made the same employment decision even in the absence of the protected speech. Mt. Healthy, 429 U.S. at 287. This determination is a question of fact subject to reversal only upon a finding of clear error. Hall v. Marion Sch. Dist. Number 2, 31 F.3d 183, 193 (4th Cir.1994). A court must then determine "whether the employee's interest in the speech was outweighed by the employer's 'interest in the effective and efficient fulfillment of its responsibilities to the public.' " Joyner v. Lancaster, 815 F.2d 20, 23 (4th Cir.) (quoting Connick, 461 U.S. at 150), cert. denied, 484 U.S. 830 (1987).
 
 
 13
 Orga and Stanaway alleged that they were terminated[2] because they had not supported Williams' candidacy and because they had been suspected of supporting his rivals. We agree with the district court that their political speech in the context of an election for sheriff involved a matter of public concern. Political speech has long been protected by the First Amendment. See, e.g., Connick, 461 U.S. at 145. As a district court noted in a case in which deputies alleged that they had been demoted because they had supported their sheriff's political opponent, "Few areas of free speech are more protected than political speech in the electoral process." Pierson v. Gondles, 693 F.Supp. 408, 414 (E.D.Va.1988).
 
 
 14
 The district court assumed arguendo that Orga and Stanaway had shown that their protected speech was a substantial or motivating factor in Williams' decision to terminate them. The district court concluded that Williams had satisfied his burden of proving that he would have reached the same decision regardless of Orga and Stanaway's protected speech. The court found that both Orga and Stanaway had exhibited negative attitudes that had affected their per formance in the Sheriff's Department to a degree that warranted dismissal. The court observed that firing Orga and Stanaway may have been an unjust or extreme reaction to their attitude problems and that discipline in the Sheriff's Department may have been erratically or inconsistently applied. Nonetheless, the court found that the terminations were essentially what the Supreme Court described as "ordinary dismissals from government service which ... are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." Connick, 461 U.S. at 146-47.
 
 
 15
 Orga and Stanaway challenge the district court's factual finding that they would have been terminated regardless of their protected conduct. In an action tried without a jury, a district court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a); see Alvarado v. Board of Trustees of Montgomery Community College, 928 F.2d 118, 120-21 (4th Cir.1991) ("Rule 52(a) requires this court to review the trial court's findings with great deference especially when the factfinder has based his decision in part on the credibility of the witnesses.").
 
 
 16
 We find that the testimony of several Sheriff's Department employees regarding the disruptive attitudes of Orga and Stanaway amply supports the district court's findings. Several witnesses testified that Stanaway, when he did not receive a promotion, sulked for over a year and would often not talk to Williams. Adam testified that he had twice recommended that Williams terminate Stanaway. Orga had been voted off the SWAT team, had been highly critical of his superiors, and had frequently complained to Williams about the need for cages in police cars. Moreover, Williams retained and even promoted some employees, such as Patrick, who had not supported his campaign. Thus, we conclude that the district court did not commit clear error in finding that Williams had established by a preponderance of the evidence that he would have decided not to reinstate Orga and Stanaway even in the absence of their protected speech.
 
 III.
 
 17
 Orga and Stanaway also contend that the district court erred in granting Williams' motion for partial summary judgment on the basis of qualified immunity. We must reach this issue because the court's ruling prevented Orga and Stanaway from receiving a jury trial. If they had been allowed to sue Williams in his individual capacity, they would have been entitled to a jury trial because they could have recovered money damages. However, they were not entitled to a jury trial after the court's ruling on qualified immunity because their only remaining claim sought equitable relief in the form of reinstatement against Williams in his official capacity. Because a court cannot deprive a party of the right to a jury trial by erroneously dismissing a legal claim, see Lytle v. Household Mfg., Inc., 494 U.S. 545, 552-54 (1990), we must determine whether the district court correctly granted qualified immunity to Williams.[3]
 
 
 18
 Under the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The test for determining whether qualified immunity attaches requires: (1) identifying the specific right allegedly violated; (2) determining whether the right was clearly established when the alleged violation occurred; and (3) determining whether a reasonable officer would have known that the challenged action would violate that right. Simmons v. Poe, 47 F.3d 1370, 1385 (4th Cir.1995) (citing Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992)). To determine whether a right was clearly established, a court should focus "not upon the right 'at its most general or abstract level, but at the level of its application to the specific conduct being challenged.' " Id. (quoting Pritchett, 973 F.2d at 312). We have noted that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992), cert. denied, 113 S.Ct. 1048 (1993). We review de novo the district court's determination of whether qualified immunity attaches. See Harlow, 457 U.S. at 818.
 
 
 19
 As discussed above, when Williams terminated Orga and Stanaway in December 1991 and January 1992, respectively, courts applied a balancing test applied to terminations based on constitutionally protected political speech. See, e.g., Connick v. Myers, 461 U.S. 138, 142 (1983). The critical question is whether a sheriff in Virginia should have been aware that terminating deputy sheriffs because they spoke in favor of another candidate during the sheriff's re-election campaign would have violated their First Amendment rights. This inquiry involves a balancing of the deputies' interest in their speech and the sheriff's interest in the effective and efficient fulfillment of his department's responsibilities to the public. Joyner v. Lancaster, 815 F.2d 20, 23 (4th Cir.), cert. denied, 484 U.S. 830 (1987). The balancing is particularly difficult in this case because both interests are strong:
 
 
 20
 Few areas of free speech are more protected than political speech in the electoral process. On the other hand, the superior officer in a paramilitary unit is given great leeway to compromise the freedoms of his employees in order to promote discipline.
 
 
 21
 Pierson v. Gondles, 693 F.Supp. 408, 414 (E.D.Va.1988). Thus, the nature of this test suggests that the right was not "clearly established." See, e.g., Bartlett v. Fisher, 972 F.2d 911, 916-17 (8th Cir.1992) (concluding that qualified immunity should rarely be denied under Connick ); Benson v. Allphin, 786 F.2d 268, 276 (7th Cir.) (same), cert. denied, 479 U.S. 848 (1986).
 
 
 22
 In addition to the difficulty of the balancing test, we conclude that the right asserted by Orga and Stanaway had not been clearly established by Fourth Circuit case law. In Joyner, we affirmed the dismissal of the senior captain of a North Carolina sheriff's department because he actively campaigned for the sheriff's opponent. Joyner, 815 F.2d at 23-24. Although the plaintiff in Joyner had an important, supervisory role, his campaigning caused major disruptions within the department, and he was acting in part for personal gain, id. at 21-22, we find that it would have been reasonable for Williams to rely on Joyner despite these distinctions. Joyner clearly established that a sheriff could terminate certain employees for their political speech and did not clearly establish that sheriffs could not terminate nonsupervisory employees who did not cause disruptions and who did not act for personal gain.
 
 
 23
 Because the right asserted by Orga and Stanaway was not clearly established when Williams decided not to reinstate them, we affirm the district court's granting of partial summary judgment in favor of Williams based on qualified immunity.
 
 IV.
 
 24
 For the foregoing reasons, we affirm the district court's judgment in favor of Williams on both summary judgment and the merits.
 
 AFFIRMED
 
 
 [1]
 The parties agreed that sovereign immunity barred the recovery of money damages from Williams in his official capacity, and they do not raise this issue on appeal
 
 
 [2]
 The distinction between termination and the refusal to reinstate makes no difference for our legal analysis. See Rutan v. Republican Party of Ill., 497 U.S. 62, 72 (1990)
 
 
 [3]
 In Sailor v. Hubbell, Inc., 4 F.3d 323, 326 (4th Cir.1993), we held that a district court's decision need not be reversed unless the erroneous denial of a jury trial was harmful to a party. If the court properly would have ordered judgment as a matter of law against the party had it been permitted to present its claims to a jury, then the error was not harmful. Id. In this case, however, we conclude that the district court could not have properly ordered judgment as a matter of law in favor of Williams. The issue of whether Williams would have terminated Orga and Stanaway regardless of their protected speech involves a question of fact that requires assessing the credibility of witnesses