<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1092**

ESTATE OF JOHN CECIL SPINNER, Deceased,

Plaintiff - Appellant,

v.

ANTHEM HEALTH PLANS OF VIRGINIA, INCORPORATED; EMPLOYEES GROUP HEALTH PLAN OF COMMERCIAL GLASS & PLASTICS, INCORPORATED, John M. Hiller, Administrator; COMMERCIAL GLASS & PLASTICS, INCORPORATED; JOHN M. HILLER,

Defendants - Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, District Judge. (6:07-cv-00050-nkm-mfu)

Argued: March 24, 2010            Decided: June 16, 2010

Before KING and GREGORY, Circuit Judges, and Joseph R. GOODWIN, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge King and Judge Goodwin joined.

**ARGUED:** William Adair Bonner, LAW OFFICES OF WILLIAM ADAIR BONNER, Media, Pennsylvania, for Appellant. David Edward Constine, III, TROUTMAN SANDERS, LLP, Richmond, Virginia; Mark Joseph Peake, CASKIE & FROST, Lynchburg, Virginia, for Appellees. **ON BRIEF:** Laura D. Windsor, TROUTMAN SANDERS,

LLP, Richmond, Virginia, for Appellee Anthem Health Plans of Virginia, Incorporated.

_____

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

This appeal arises from the district court's dismissal of the appellant's Employee Retirement Income Security Program ("ERISA") complaint for failure to state a claim under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). The Estate of John Cecil Spinner ("the Estate") sought to have over $1 million in medical bills, incurred between May 2004 and December 2004, paid by the defendants. Because the Estate failed to apply for a continuation or conversion of Spinner's insurance coverage, the district court did not abuse its discretion in holding that the Estate failed to make out a claim under ERISA. We therefore affirm.

I.

John Cecil Spinner ("Spinner") became a subscriber and participant in the Commercial Glass & Plastics ("CGP") Health Plan ("the Plan"), which was insured by Anthem Health Plans of Virginia ("Anthem"), on July 1, 2003. On March 13, 2004, he was admitted to the Lynchburg General Hospital with an intracerebral hemorrhage, and on March 25, he received a tracheotomy and feeding tube, rendering him unable to speak on his behalf. On April 2, 2004, Robert Hiller[1] ("Hiller"), President of CGP, sent

3

a letter to Spinner's wife Patricia, which read in relevant part:

> As John is no longer a full or part-time employee of Commercial Glass & Plastics, and his sick, vacation and extended time has ended, we are unable to continue his health insurance coverage. Our Company has less than 20 employees, Federal COBRA insurance requirements do not apply. Because of a qualifying event that cancels John's health insurance coverage with Commercial Glass & Plastics you have two options:
>
> - You can add him to the insurance plan with your employer, or
>
> - You can obtain individual health insurance coverage for him
>
> Please be aware that a decision needs to be made as soon as possible. John's health insurance through Commercial Glass & Plastics will end on April 30, 2004 and he will need a new policy before this one terminates.
>
> Let us know if you have questions and we will try to answer them.

J.A. 136.[2] Neither Spinner nor his wife applied to continue or convert his insurance coverage after the letter was sent by Hiller. Spinner was transferred to Kindred Hospital ("Kindred") in Greensboro, North Carolina on April 29, 2004. Prior to the

---

[1] The complaint lists "John Hiller" as President of CGP, but his name is actually "Robert." Though all the pleadings list him as "John," we refer to him as "Robert" because the parties agree that it was an error.

[2] Citations to J.A. __ refer to the Joint Appendix filed by the parties upon appeal.

transfer, Kindred contacted Anthem, who was still Spinner's insurance provider, to verify coverage; Anthem sent certification on April 21, 2004. On May 1, 2004, Spinner's insurance benefits were terminated. CGP notified Anthem that Spinner's benefits had been cancelled on May 4, 2004. Despite the lapse in coverage, Spinner continued to receive medical care at Kindred, until he passed away on December 30, 2004. Kindred demanded payment from Anthem for the medical expenses Spinner incurred from April 29 to December 30, 2004, a sum which totaled $1,142,970.42. However, Anthem refused to tender payment because Spinner was not insured at the time services were rendered.

William Adair Bonner ("Bonner") was appointed Administrator of Spinner's Estate on November 13, 2006. On November 20, 2006, Bonner sent a letter to Anthem that read in relevant part:

> I have reviewed a letter from Mr. Spinner's employer, dated April 2, 2004, addressed to Patricia Spinner, and have determined that it does not comply with the requirements of notice to Patricia Spinner and to John Cecil Spinner respecting their individual rights to Virginia State continuation of insurance benefits. I enclose a copy of said letter.
>
> During Mr. Spinner's lifetime he was covered under a group policy with Anthem Blue Cross Blue Shield through his employer.
>
> I anticipate prompt contact from your Legal Department respecting this matter.
>
> I am demanding by this correspondence that you forward to my attention the <u>appropriate legal notification</u> of

5

> rights to continuing insurance coverage which should have been previously sent to Mr. Spinner during his lifetime. At all relevant times of service Mr. Spinner was an incapacitated person. He died December 30, 2004.

J.A. 143 (emphasis added). A similar letter was sent to Hiller on the same date. Neither Hiller nor Anthem responded to Bonner's letter. On January 22, 2007, Bonner sent a letter to Anthem's General Counsel that read in relevant part:

> As my demand as Administrator of the Estate of John Cecil Spinner for necessary notification and forms to file for continuation of health benefits and any other available benefits has been denied, please forward to me instructions and necessary forms for my filing of an administrative appeal.

J.A. 141.

Bonner filed suit against Anthem, Employees Group Health Plan of CGP, CGP and Hiller on behalf of the Estate in the Virginia Circuit Court at Lynchburg, alleging violations of Virginia insurance laws and common law claims of estoppel and bad faith. Defendants filed notice of removal with the district court in the Western District of Virginia, alleging the state law claims were pre-empted by ERISA, and the case was removed to federal court. The Estate then filed an amended complaint in district court, alleging that the defendants: unlawfully denied Spinner benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (Count I); breached their fiduciary duties under ERISA § 502(a)(2) & (a)(3), 29 U.S.C. § 1132(a)(2) & (a)(3)

6

(Counts II and III); and failed to provide either continuation of coverage or conversion of coverage under Virginia Code §§ 38.2-3416 & 38.2-3541 (Count IV); and alleged estoppel and bad faith under Virginia common law (Counts V and VI). The defendants jointly filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), which the district court granted on December 18, 2008.

The district court found that Count I must fail as a matter of law because neither Spinner nor his representative applied for either continuation or conversion of benefits during the period in question, and therefore could not have been unlawfully denied benefits under § 1132(a)(1)(B). The complaint failed to state a claim under Count II because a § 1132(a)(2) claim must be made on behalf of the plan at issue, and cannot be made on behalf of an individual. The district court found that § 1132(a)(3) only provides equitable relief, not the monetary damages the Estate sought, and therefore held that Count III failed as a matter of law. Count IV was dismissed because 1) Virginia insurance laws do not provide a private right of action, and 2) assuming arguendo they did, the Estate failed to state a violation of the laws in its complaint. Finally, because it is settled law in the Fourth Circuit that ERISA preempts common law claims of estoppel and bad faith, the

7

district court found that both Counts V and VI must fail as well.

This appeal followed.

## II.

This Court reviews a district court's order granting a motion to dismiss de novo. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991). A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating the complaint, this Court will "construe the factual allegations 'in the light most favorable to the plaintiff.'" Schatz, 943 F.2d at 489 (quoting Battlefield Builders, Inc. v. Swango, 743 F.2d 1060, 1062 (4th Cir. 1984)). We are not, however, "bound by the complaint's legal conclusions." Robinson v. American Honda Motor Co, Inc., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Schatz, 943 F.2d at 489).

III.

Before we endeavor to address each Count in the amended complaint dismissed by the district court, it is important to note that the Estate made several key factual concessions, both at the motion to dismiss hearing, and at oral argument before this Court, which preclude relief in this appeal. First, Bonner, Administrator of the Estate and counsel on both the suit below and the appeal, conceded that he received a copy of the Summary Plan Description ("SPD"), which describes the options available to plan participants upon termination of their coverage, at the time he was appointed Administrator. See J.A. 344. Second, Bonner conceded that he was aware of the need to make an election and apply for benefits as mandated by the SPD and under ERISA. Finally, Bonner conceded that he never in fact made an election or application for benefits. In light of these concessions, all three of the ERISA counts in the amended complaint must fail.[3]

---

[3] Relief under Counts IV, V and VI is clearly precluded by our precedent. Count IV alleges that the appellees violated Virginia law by not providing Spinner or his wife with notice of his options to either continue or convert his insurance coverage upon termination. However, Va. Code Ann. §§ 38.2-3416 and 38.2-3541 do not have notice requirements, but rather require group insurance health plans to offer at least one of two options to group participants upon termination: conversion of coverage or continuation of coverage. See Va. Code Ann. §§ 38.2-3416(a) and 38.2-3541(1)-(2).

(Continued)

9

A.

Count I of the Estate's amended complaint alleges that the defendants violated 29 U.S.C. § 1132(a)(1)(B) of ERISA, which reads:

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

---

As the Estate noted in both its arguments before the district court and its opening brief and oral argument before this Court, the CGP Plan complied with the requirements of the statute because both options are recited in the SPD. See J.A. 138-40.

Counts V and VI, which allege Virginia common law claims of estoppel and bad faith, clearly fail under our precedent, as even the Estate acknowledged ("The Fourth Circuit has rejected that . . . equitable estoppel claims are permitted [under ERISA]."). See, e.g., Salomon v. Transamerica Occidental Life Ins. Co., 801 F.2d 659, 660 (4th Cir. 1986) (holding state law breach of contract and estoppel claims are preempted by ERISA); Holland v. Slack, 772 F.2d 1140, 1147 (4th Cir. 1985) (same). Section 514(a) of ERISA "preempts 'any and all state laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." Shaw v. Delta Airlines, 463 U.S. 85, 91 (1983) (quoting 29 U.S.C. § 1144(a)). Thus, the law is well settled that the Estate's common law claims, which are an attempt to collect on benefits controlled by ERISA, are preempted.

10

29 U.S.C. § 1132(a)(1)(A) & (B). In alleging they were wrongfully denied benefits, the Estate argues that the defendants refused to provide information to either the Spinners or to the Estate Administrator, which was necessary to extend coverage under the Plan.

In order to make out a claim under § 1132(a)(1)(B), a person must be "a participant or beneficiary" of the plan at issue. 29 U.S.C. § 1132(a)(1). The district court found "[n]othing in the facts alleged, however, suggests that Plaintiff was wrongfully denied insurance benefits or that Plaintiff even <u>applied</u> for benefits when Mr. Spinner's group coverage ended." J.A. 369 (emphasis in original). The Estate further conceded at the motion to dismiss hearing that it had no such claim.

> As to an 1132(a)(1)(B) claim – that's the standard general benefit claim that you have in ERISA – there has been a claim out – alleged in the compliant. However, this really isn't a benefit claim. We have never submitted the bills. There has never been a formal denial or rejection. There has never been an appeal of those denials. The real issue in this case is the process and the application component of the conversion privilege, which is a fiduciary duty.

J.A. 349. In order to succeed in an action for wrongful denial of benefits, it is axiomatic that a party must have in fact <u>applied</u> for the benefits they claim to have been wrongfully denied. <u>See, e.g.</u> <u>Butler v. MFA Life Ins. Co.</u>, 591 F.2d 448, 452 (8th Cir. 1979) (the insurance company can insist on strict

11

performance by the insured of the conditions precedent to obtain conversion of coverage). Neither Spinner nor his wife contacted Anthem after receiving the letter from Hiller regarding the termination of Spinner's insurance coverage.

For the purposes of argument, we will assume that Spinner was incapacitated and unable to apply for benefits after March 25, 2004.[4] Once the Estate appointed an Administrator to act on Spinner's behalf in November 2006, however, there was an opportunity for Bonner to make a benefit election.[5] Bonner was appointed Administrator of the Estate on November 13, 2006. The SPD provides that a plan beneficiary must "[c]ontact Anthem within 31 days of the day coverage ends to prevent a lapse in coverage. If you meet the enrollment requirements for an

---

[4] There was no evidence before the district court that Spinner's wife was appointed power of attorney during this period, and therefore it is unclear whether or not she would have been able to make the election on her husband's behalf.

[5] While this Court has held that "[e]quitable tolling, while rare, does allow for exceptions to the strict enforcement of deadlines," see Gayle v. United Parcel Service, Inc., 401 F.3d 222, 226 (4th Cir. 2005), we have not applied the principle to toll ERISA deadlines. Other Circuits have found that under the appropriate circumstances, the deadline to apply for benefits under ERISA may be tolled until the appropriate party can exercise the rights of the beneficiary under the plan. See, e.g., Barrett v. Principi, 363 F.3d 1316, 1318-21 (Fed. Cir. 2004) (mental illness may justify tolling the 120-day appeal period under certain circumstances); Chapman v. Choicecare Long Island Term Disability Plan, 288 F.3d 506, 511-14 (2d Cir. 2002) (remanding for determination at district court whether mental illness impaired timely request for review in ERISA case).

individual plan and apply within 31 days, there will be no lapse in coverage." J.A. 140. At the district court, the Estate argued that its November 20, 2006, letter sent to Hiller and Anthem was sufficient to constitute an application for benefits. The district court found the argument unavailing. We agree. The letter which the Estate alleges was sufficient to warrant an application for benefits instead requests notice of Spinner's rights to continue insurance coverage: "I am demanding by this correspondence that you forward to my attention the appropriate legal notification of rights to continuing insurance coverage which should have been previously sent to Mr. Spinner during his lifetime." J.A. 143 (emphasis added). It is clear from the content of his letter that Bonner incorrectly assumed that CGP was covered by the Consolidated Omnibus Budget Reconciliation Act, ("COBRA"), 29 U.S.C. §§ 1161(a) and (b), and 1166, which contains strict notice requirements upon termination of coverage. The COBRA provisions of ERISA, however, only apply to group health plans where the employer has more than twenty employees. § 1161(b). Neither party disputes that COBRA does not apply to CGP, as it is an employer with less than twenty employees, and therefore Bonner's letter not only misstated the defendants' obligations to Spinner, but could not under any circumstances be interpreted as an application for continuation of benefits under the plan. Bonner's letter similarly cannot

13

be construed to allege a violation of ERISA's provisions that apply to small employers. ERISA requires that CGP, as administrator of an employee benefit plan, provide an SPD to participants and beneficiaries that contains information regarding the plan, including "the plan's requirements respecting eligibility for participation and benefits . . . [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022. The section of the SPD entitled "After Coverage Ends," J.A. 137-140, contains the information Spinner and subsequently Bonner were required to receive regarding the availability of post-plan coverage. It is not disputed that Spinner had a copy of the SPD in his lifetime. Because Bonner conceded that he received a copy of the SPD at the time he was appointed Administrator of the Estate, and it contained the information mandated by § 1022, his letter fails to allege a violation of ERISA as well.

We further agree with the district court's finding that the letter Hiller sent to Patricia Spinner could not be construed as a wrongful denial of benefits. First, there was no pleading before the district court which asserted that Hiller, as President of CGP, was in fact a fiduciary of the plan. Furthermore, even assuming that he was, the letter could not be construed as deceptive in that it informed the Spinners that

14

action must be taken to ensure that Spinner's insurance did not lapse before his coverage was terminated at the end of the month.[6]

Because the Estate failed to show that Spinner or the Administrator of his Estate even applied for benefits, the district court did not abuse its discretion in dismissing Count I of the complaint for wrongful denial of benefits under § 1132(a)(1)(B).

B.

The Estate alleged in Counts II and III of its amended complaint that the defendants breached their fiduciary duties under 29 U.S.C. §§ 1132(a)(2) & (a)(3). The statutory provisions read as follows:

(a) Persons empowered to bring a civil action

A civil action may be brought –

. . .

---

[6] Although Hiller's letter misstated the deadline for applying to continue coverage (thirty-one days from the date the insurance was terminated – so until May 31, not the end of April), the Estate failed to show the Spinners were harmed by being provided an earlier deadline to elect to continue or convert coverage. Hiller's notice provided Patricia Spinner with an opportunity to contact either CGP or Anthem to prevent a lapse in coverage. Nothing in the record on appeal indicates that she took any further steps to acquire coverage upon receipt of the letter.

15

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(2) & (3). The Estate alleged in the amended complaint that the defendants breached their fiduciary duties to the plan by failing to provide information regarding Spinner's post-termination coverage options and providing misleading information about when Spinner's coverage terminated. On appeal, appellant appears to argue that defendants Hiller and Anthem provided misleading notice to Spinner and his wife regarding the Plan and their rights once the CGP plan was terminated, in violation of their fiduciary duties as outlined by ERISA. Because the Estate is seeking individual, non-equitable relief, both Count II and III must fail.

1.

Section 1132(a)(2) enables plan participants and beneficiaries to bring actions on behalf of the plan to recover for breaches of fiduciary duties which harm the plan. The Supreme Court made clear that the injury which the § 1132(a)(2) provision attempts to redress cannot be an individual injury.

16

"[A]lthough § [1132(a)(2)] does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." LaRue v. DeWolff, Boberg & Assocs., 552 U.S. 248, 256 (2008). Although LaRue has been characterized as broadening the scope of the remedy provided by § 1132(a)(2), it certainly does not encompass the type of claim the Estate attempts to bring in its suit against Anthem. As the district court aptly pointed out, the Estate seeks the "recovery of individually-based benefits that should have allegedly been provided to Mr. Spinner." J.A. 373. Although the complaint attempts to style the § 1132(a)(2) claim as one on behalf of the plan, alleging the defendants breached their fiduciary duties to the plan, mere recitation of the statutory requirements does not covert what is essentially a claim to recover individual benefits into a proper claim under (a)(2). We therefore affirm the district court's dismissal of Count II.

2.

The district court dismissed Count III of the amended complaint because it "does not provide the type of relief that Plaintiff essentially seeks." J.A. 374.

The Supreme Court has held that § 1132(a)(3) was intended to be a catchall provision, providing a "safety net, offering

17

appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). Because subsection (a)(3) provides equitable relief, it is not the appropriate vehicle through which to redress wrongful denial of benefits. Id. Instead, this Court has recognized that "[w]hen a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § [1132](a)(1)(B)." Coyne & Delaney Co. v. Blue Cross & Blue Shield, 102 F.3d 712, 715 (4th Cir. 1996). Although the Estate attempted to style Count III as a request for equitable relief by requesting "restitution in the form of full benefits," J.A. 126, it is clear that Count III is a restatement of the relief requested under Count I, namely, full benefits. In order for restitution to be equitable relief, and not legal relief, it "must not seek to impose personal liability on the defendant, but to restore the plaintiff particular funds or property in the defendant's possession." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002). Here, there is no property which belongs to the Estate that can be traced back to the possession of the defendants. Instead, the Estate seeks money damages for allegedly wrongfully denied benefits, which is precisely what § 1132(a)(1)(B) is designed to address, not § 1132(a)(3). "When a beneficiary simply wants what was

18

supposed to have been distributed under the plan, the appropriate remedy is § [1132](a)(1)(B)." Coyne, 102 F.3d at 715.

Because § 1132(a)(3) clearly does not provide for the type of relief the petitioner sought, and therefore dismissal was proper, we need not address the other bases of the district court's dismissal of Count III. See Catawba Indian Tribe of S.C. v. City of Rock Hill, 501 F.3d 368, 372 n.4 (4th Cir. 2007) ("We are . . . entitled to affirm the district court on any ground that would support the judgment in favor of the party prevailing below.").

Even if Bonner had made an argument for equitable relief outside of what is afforded by the statute based on Spinner's incapacity and inability to apply for benefits himself, it would be unavailing given the fact that Bonner has never applied for benefits as the agent of Spinner's Estate.

IV.

In light of the foregoing reasoning, the district court order dismissing petitioner's complaint is

AFFIRMED.

19